**(38 South. 567.)**

No. 15,418.

**WILLIAMS v. LEVERT LUMBER & SHINGLE CO., Limited.\***

(April 24, 1905.)

INJURY TO EMPLOYÉ—DANGEROUS APPLIANCE —ASSUMPTION OF RISK.

The master is under a legal obligation to furnish safe appliances to his workmen, and

\*Rehearing denied May 22, 1905.

by proper inspection and care to keep them in safe condition. In case of an injury resulting from the breaking of part of the appliances, the master is in better condition to know the cause than the workman. As a general rule, the master must show that he has complied with the obligations imposed upon him. A workman does not, by the mere fact of taking employment, assume the risks of all accidents which may happen from the breaking of part of the appliances.

(Syllabus by the Court.)

Appeal from Twenty-First Judicial District Court, Parish of Iberville; Edward Blount Talbot, Judge.

Action by John Williams against the Levert Lumber & Shingle Company, Limited. Judgment for defendant, and plaintiff appeals. Reversed.

Moïse Lionel Levy and Jacob Haight Morrison, for appellant. Frank Edward Rainold, for appellee.

### Statement of the Case.

NICHOLLS, J. The plaintiff prays for judgment against the defendant in the sum of $12,000, with interest. His action is based upon the allegations that he was employed by the defendant company to load cars at its skidder in the parish of Iberville; that while thus employed on the 24th of June, 1903, without any fault or negligence on his part, he was seriously injured (stating to what extent) by the breaking of a part of the paraphernalia of the said skidder, and by a large block, suspended, falling upon him, and the skidder line falling upon him, which block and skidder line were placed in such a position as to be dangerous, and were not kept in a safe condition; that the injury suffered was entirely due to the fault, negligence, and want of care of the defendant company, and in not keeping the said machinery in safe condition.

The defendant first pleaded the general issue. It denied that the injury caused to plaintiff was in any manner due to negligence, carelessness, or want of skill on the

part of defendant or any of its employés. It averred that the plaintiff assumed the ordinary risks incident to his employment, and the accident which befell him came within the scope of such risks.

The district court rejected plaintiff's demand, and he appealed.

### Opinion.

The plaintiff was in the employ of the defendant company when he received the injury for which he claims damages. It was admitted on the trial that his injuries were as stated to be by himself. The accident occurred in the swamp at the loggery camp of the defendant, under what is called a "skidder." It was caused by the sudden breaking of what is known as the "shackle pin" of the skidder, resulting in the falling of the skidder line, which, striking the plaintiff, knocked him senseless, producing the injuries set out in the pleadings. No one can say what caused the shackle pin to break. When it broke it fell to the ground, and was never afterwards seen.

Defendant criticises plaintiff's pleadings as being entirely too vague, but, as he was made insensible by the blow which he received, it is not at all surprising that he was unable to give more specifically than he did the details of the occurrence and its causes. His employers and those who had charge of the working appliances were in much better position to be informed upon these points than he was.

The allegations that he was injured by the breaking of a part of the paraphernalia of the skidder, and by a large block suspended falling upon him, and the skidder line falling upon him, which block and skidder line were placed in such a position as to be dangerous, and were not kept in safe condition, and that the accident was entirely due to the fault, negligence, and want of care of the defendant company, and in not keeping the said machinery in safe condition, though

general, were sufficiently specific, under the circumstances, to allow testimony tending to support and establish them to be received.

The plaintiff testified that on the 24th of June the block pulled down out of the tree. He was attending to his work as usual—his work required his passing under the blocks—pulling the cars in place to load them. The skidder line struck him in the head, and knocked him off the car; breaking his arm in two places, and cutting him on the left ankle. In putting the logs on the skidder line, when they had a heavy load, they would give signals for every man to get out of the way, but, not knowing that "I was in danger, I would go right along, and that is where I got hurt. What caused the skidder line to break was being overloaded or jacked behind a tree. This thing of the skidder line being jacked behind a log or tree never happened very often, but, when it does, they give a signal to get out of the way, but this time they did not give any signal. I did not see or hear any warning for me to get out of the way. The engine is supposed to be more powerful and to pull more than the rigging will hold, and the skidder line is pulled down by putting too much steam on and trying to pull an overload. If a log gets jacked behind a stump or tree they will stop the skidderman until they get unjacked, and they will tell him to go. In that way there won't be any danger. When they get in that way they will always give warning to get out of the way." At the time the accident happened to him there was no warning given to him. Mr. Davenport was running the skidder at the time of the accident. On cross-examination he said he had been working around a skidder about three years. Knew all about how a skidder was fixed up. He was not so well acquainted with the risks and dangers incident to operating a skidder. He gave it as his opinion that the cause of the accident was that the skidder was overloaded or

jacked behind a tree. His position was known as a "ground loader," and his duty was to pull the car in place to be loaded.

Davenport testified that he was in charge of the skidder, and was experienced in that work. That defendant's skidder was a complete, new apparatus. There was not, to his knowledge, nor to that of any one else, any defect in the apparatus. When this accident occurred the shackle pin broke. The shackle pin is what the big block is held with, and connects the chain which goes around the tree. That shackle pin was in good condition. A man was up that morning and oiled the block and examined the chains. It is a frequent occurrence that a shackle pin or a link in the chain breaks. The plaintiff was a "ground loader," experienced in that particular line of duty, and knew what he was going under, and the chances he had to take. He knew that these accidents—the breaking of shackle pins and chains—were of frequent occurrence in operating a skidder. There was no necessity of warning him to be cautious and particular, because an experienced man knows the strain he is under, and the risks he assumes. Alfred Foster had charge of attaching the chains and blocks, and keeping them oiled. He was the "head rigger"—a competent and experienced man in that kind of work. At the time of the accident the skidder apparatus was in a safe condition. Witness had taken every precaution to make it safe. He had looked after it himself. On cross-examination he said that the shackle pin in question was suspended in a tree about 30 feet high. Witness never went up to that pin himself. He had no personal knowledge of that shackle pin. He only knew what his man that he sent up there every day told him. He did not know what caused it to break. That shackle pin only broke once. Shackle pins broke often. It was a frequent occurrence. The breaking of the shackle pin was not caused by loading the skidder line too heav-

ily. It was impossible for him to say whether the breaking of the shackle pin was due to inferior workmanship. Plaintiff was a negro. Alfred Foster being asked whether it was not possible to get a shackle pin sufficiently strong to stand the strain and not break, he said that was a question it was impossible to answer. The outside appearance may be all right, and there may be a defect inside. The strain on the skidder line in hauling out the logs has something to do with the breaking of the shackle pin. It will sometimes break on a moderate and usual load. Any man operating a skidder line is liable to instant death at any time. The loading of the skidder has no effect on the breaking of the skidder line. It requires some strain on it to break it. The loading on the skidder line causes the strain on the shackle pin. It was a small log on the line when the shackle pin broke. Plaintiff had witnessed several accidents of that kind. These frequent accidents happened out at that skidder. Alfred Foster testified that he was "head rigger" at the skidder, and had followed that occupation for six years. He rigged that skidder line on that morning in the usual way that he had rigged it before. In his opinion, it was safe. He did not discover any flaws whatever in it, and it seemed to be the best and heaviest rigging that he had ever handled.

On cross-examination he said he was present when the accident happened. The pin broke—the shackle pin of the skidder block. He did not see the pin after it broke. He did not know whether it was cracked, or not, before it broke. Witness had put it there a day or two before. He did not examine the pin that day. The pin seemed good when he put it there, and he did not think it required examination every day. Witness did not see any cause at all for that skidder to break. He did not know what caused it. He did not make an examination of that part of the skidder which broke.

He could not find the pin. That pin might have been cracked that morning, but he did not know it, because he did not examine it that day. He examined the pin every other day when he oiled the blocks. He had just examined it the day before.

Ernest Robertson testified that he was foreman of the swamp crew having in charge the skidder apparatus at the time of the accident. The outfit was a new one. Lines, shackle pins, and blocks were in the best condition, and witness had employed the most experienced men he could get. The rigging was the most up to date and improved that could be had at the time, and was heavy. Every man that was employed to work around that skidder was cautioned by him to be careful and watchful, and to report anything they saw wrong to him. On the day of the accident, as far as he knew, every one about there knew everything was in first-class condition, as they had always kept them. Plaintiff was an experienced man in his line of work. Witness did not think any one knew the cause of the accident. It might have been caused by the log being jacked or jumping or striking an obstacle. It is customary, when the man at the engine knows that the log on the skidder is jacked, for him to warn every one around the machinery. The log is liable to become jacked without his knowing it. It is customary to station men along the route of the skidder line to give warning of the logs getting jacked. He did not know if any warning was given at that time. After the accident, witness found the shackle, and not the pin. About 30 minutes after the accident he saw the shackle. The pin was missing from the shackle.

Defendant's counsel urges that the case involves only questions of fact, and the decision of the trial judge should be affirmed; that there was no evidence before the court as to the cause of the accident; that the mere fact of an accident does not carry with it the presumption of negligence. He refers the court to Bailey's Personal Injuries Relating to Masters & Servants, vol. 1, p. 137, and to Henry v. Brackenridge Lumber Co., 48 La. Ann. 950, 20 South. 221.

Bailey's Master's Liability for Injuries to Servants, p. 508, declares that:

"The fact of the happening of an accident has no tendency to prove negligence, for the very good reason, if for no other, that negligence, or the facts from which it is to be inferred, must be affirmatively proved. This statement of a rule must not be so misunderstood as to deny that an accident may not reveal the cause, and thus furnish competent and sufficient proof of negligence. It may show defects of such a character and of such long standing that it may be well said that the exercise of ordinary diligence might and could have discovered them."

In Henry v. Brackenridge Lumber Co., referred to, the expression which counsel cites was used. It was an action brought by a father for damages for the death of his son while in the defendant's employ, on an allegation that the death was caused by the fault and negligence of the employer, but that case was decided on its own special facts. There was no breaking of any part of the appliances furnished by the master. They were all shown to be in good condition. It was shown that the boy had become entangled in one of the belts connected with the machinery, and there was failure to connect that fact with any act of omission or commission by the employer.

In the present case there is no dispute as to the fact that the accident was the direct result of the breaking of a part of the appliances furnished by the defendant. There is no dispute as to the legal proposition that the master is under an obligation to furnish safe appliances to his workmen, and to keep them in safe condition through inspection and repair, nor as to the proposition that the master is in much better position to know what the cause of the breaking of the appliances was, than the workmen, who are not in charge of them. There are several circumstances which are unfortunate for the defendant. One is that, although it was customary on other days to examine

the shackle pin, it was not inspected on that particular day; another, that, although it was customary for men to be stationed along the shackle line to give notice of the jacking of the logs, there was no evidence produced that men were so stationed on that particular morning. A third fact is that the engineer's testimony was not taken on the trial, nor was it shown why it was not. We think that, where such a daily varying strain was brought to bear upon the shackle pin, there should have been a daily inspection of the condition of the pin. It was a matter easily done, and this was a very important precautionary measure towards insuring the safety of the employés. The nonproduction of the broken pin is also a fact having considerable weight.

The plaintiff did not, by the mere fact of taking employment at the skidder, consent to assume, nor did he assume, the risk of all accidents which might happen from the breaking of the shackle pin. There is no fact shown by the evidence from which such a consent could be even inferred.

For the reasons herein assigned, it is ordered that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed; and it is hereby ordered, adjudged, and decreed that the plaintiff, John Williams, do have and recover judgment against the defendant, the Levert Lumber & Shingle Company, Limited, for the sum of $1,500, with interest thereon from date of judgment at 5 per cent. per annum until paid, and costs in both courts.