No. 4939.

(Court of Appeal, Parish of Orleans.)

## A. E. MORGAN vs. TEXAS AND PACIFIC RAILWAY COMPANY.

Fergus Kernan for plaintiff and appellant.

Howe, Fenner, Spencer & Cocke, for defendant and appellee.

GODCHAUX, J.—Plaintiff appeals from a judgment of the lower Court dismissing his suit for damages for personal injuries. No written reasons in support of this judgment appear in the transcript, but from the testimony, all of which was heard out of the presence of the Court, we find the following to be the facts:

The defendant formerly operated "an elevator" for transferring freight from vessels or barges in Bayou Lafourche to its warehouse situated on the bank or levee of the bayou. The means of conveyance consisted primarily of an inclined plane or movable platform of steel or iron construction, and weighing about twenty-seven tons, reaching from the warehouse to the vessel. To meet the varying stages of water in the Bayou, there was provided at the water's edge, on each side of the plane or platform, sets of high vertical piling, on the top of which rested a heavy beam from which hung a block and pulley device, attached to the plane, and by which the latter was raised or lowered as required, by the men standing or stationed on the plane and pulling on the chain or tackle with which the block and pulley device was equipped.

When the defendant constructed a branch line of railroad along Bayou Lafourche, freight traffic by barge was discontinued, and the defendant subsequently determined to dismantle and remove the elevator. To do this work it assigned its "bridge gang," consisting of a foreman, Jones, and a crew of a dozen men, among them the plaintiff, whose regular employment was that of a bridge carpenter. It is not shown that the "bridge gang" had ever been assigned to such work before or that same constituted part or bore any semblance to that in which these men were ordinarily engaged.

The means employed to accomplish the removal required that the end of the inclined plane or platform at the Bayou's edge be elevated in the shaft to a height of eighteen or twenty feet, and it had been raised a distance of eight feet, apparently the maximum height ordinarily attained or required, when it became impossible to elevate it any further owing to the length of the chain connecting the lower pulley with the platform. Accordingly, to overcome the difficulty, this chain, which

undoubtedly formed part of the ordinary equipment, was removed and dispensed with, and in its lieu there was substituted a shorter connection between lower pulley and platform in the form of a steel or iron hooking device, known as a "crow's foot."

Work was then resumed and the men, stationed upon the platform, among them the plaintiff, were pulling upon the tackle and had raised the platform to a height of sixteen feet, when the crow's foot broke, resulting in the fall of the platform and men supported thereby.

As to the condition of this crow's foot plaintiff's testimony may be disregarded, for he evidently had no opportunity of examining it closely either prior or subsequent to the accident. On the other hand, there is the positive testimony of Jones, the foreman, to the effect that he inspected it thoroughly before he used it, as well as after it broke, and that on both occasions he found it sound and free from defects.

As this appliance does not appear to have been subjected to any sudden or unusual jar or blow, and as Jones' testimony establishes that it was free from defects, it necessarily follows that the appliance, though sound, must have been of insufficient strength to stand the strain imposed upon it.

> "But, in our view of the matter, the fact that they did break is a demonstration in itself that they were not sound, or at least of sufficient strength to answer the purpose for which they were used. For the evidence does not show satisfactorily that they were subjected to an extraordinary or unusual strain when the casualty occurred."

Clarain vs. Telegraph Co., 40 An. 182.

It is true that proof of the mere fact alone that a master has furnished an appliance unsuitable for the work in hand does not carry with it consequent liability

— 435 —

on his part, for such liability is grounded upon his neglect or failure to observe the important duty imposed upon him of exercising reasonable care in selecting a safe appliance.

The difficulty in all cases of this character is to determine whether or not this duty has been properly observed, and this difficulty arises mainly because the ordinary workman who seeks to establish negligence is usually without knowledge or means of knowledge upon this score, and, in fact, until injured, has no incentive for inquiry at all upon the subject, for he has a right to presume that the master has fulfilled his duty and has taken proper precautions for his safety.

Upon the other hand the master, who is bound in law to make prior inquiry upon the subject, is in fact usually, if not always, in the exclusive possession of thorough and reliable information not only as to the character and fitness of the appliance, but as to the methods employed in selecting it, as well as to the qualifications of the men to whom this selection is entrusted. Both before and after the accident the master commands every avenue of information and occupies a position that enables him to adduce affirmatively most positive proof, if it exists, of the exercise of the care and diligence required. And yet the servant, without knowledge and without means of knowledge, except through the master or the master's employees, finds himself confronted not only with the burden of proving affirmatively every material fact essential to his recovery, but subjected additionally to the task, almost impossible in any case, of establishing a negative—of showing that an inspection was **not** made, or, if it was made, then, that it was **not** by a proper method, **nor** by proficient men.

All of these considerations have given rise in cases of this character to a line of recent decisions, wherein the Court, having proper consideration for the situation

of the parties and their respective abilities and opportunities for marshaling and producing proof of the presence or absence of negligence, has applied with increasing laxity the rule which imposes upon the servant the burden of negativing with absolute certainty the existence or exercise of care on the master's part; and where certainty on this point is lacking through failure of the master to present proof of an enlightening character presumably in his exclusive possession or control, the servant has been held entitled to judgment if there are sufficient facts in the record from which the negligence of the master may be fairly inferred.

> Touns vs. Railroad, 37 An. 634; Clairain vs. Telegraph Company, 40 An. 182; Budge vs. Railroad, 108 La. 349; Williams vs. Lumber Company, 114 La. 805; Moses vs. Lumber Company, 114 La. 933.

In the present instance, in addition to these elements, we find that the undertaking was a dangerous and hazardous one, and the accident caused through insufficiency (not unsoundness) of a device not forming part of the ordinary equipment, but upon whose sufficiency plaintiff's safety depended. It is further shown that this device or crow's foot was not a complicated piece of mechanism, but simply an ordinary hook, whose ability to withstand the strain imposed upon it could have been readily ascertained in advance by any one competent and qualified to be placed in charge of dangerous work of this character and to be entrusted with the duty of selecting the tools with which to accomplish the undertaking. Consequently it is apparent that the selection of the tool was made either without an effort to determine its efficiency, or by a foreman whose very failure to discover an insufficiency which could have been readily ascertained by a competent person, is ample proof of his un-

fitness to make the selection. And, in either event, the master's negligence is established and consists, in the one case, of failing to make an effort to determine the sufficiency, and, in the other, in entrusting the selection of the tool to one not competent or qualified to perform that important function.

Contributory negligence on the part of the plaintiff is neither pleaded nor proved; nor can the doctrine of assumption of risk be applied, since the danger resulting from the negligence of the master in the selecting of tools is not one assumed by the servant as incidental to his employment. So, also, is the defense not sustained that the injury was due to the negligent failure of a fellow-servant to insert at the proper time steel pegs or bars to sustain the platform, as it is shown that at the moment of the accident the platform was several inches below the point where the holes were provided for placing these bars.

We are satisfied that the plaintiff is entitled to judgment, and it only remains to fix the amount of his recovery.

The plaintiff was rendered unconscious by his fall, and in addition to the shock, sustained serious fractures and was badly bruised, cut and scratched generally in head, body and limb. He was taken to the Charity Hospital in New Orleans, where he remained for over thirty days, and since his discharge he can no longer stand the strain of the manual labor incident to his former trade of carpenter. For the severe shock, suffering and injuries sustained and the time lost by him, the Court is of the opinion that an allowance of $750.00 will do such justice as is possible in such cases.

It is, therefore, ordered that the judgment be reversed and that there now be judgment in favor of plaintiff and against defendant in the sum of $750.00, with 5% interest

from date of this decree, the defendant to pay the costs of both courts.

May 30, 1910.

Rehearing refused June 17, 1910.