GULF, C. & S. F. RY. CO. v. McGINNIS et al. †
(Court of Civil Appeals of Texas. Austin.
April 24, 1912. Rehearing Denied
May 15, 1912.)

1. DEATH (§ 49*)—ACTION—COMPLAINT.

The complaint, in an action against a railroad company for death of M., its employé, brought under Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), as amended by Act April 5, 1910, c. 143, 36 Stat. 291 (U. S. Comp. St. Supp. 1911, p. 1324), providing that a railroad company engaged in interstate commerce shall, in case of injury, through its negligence, to one while employed by it in such commerce, resulting in his death, be liable in damages to his personal representative, for the benefit of his widow and children, or if none then for the benefit of other relatives, properly, if not necessarily, states for whose benefit the action is brought, and does not, by the allegation that the action is brought by plaintiff, as administratrix of M., for the use and benefit of herself, as surviving wife, show the action is brought in a dual capacity.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 64–66, 69; Dec. Dig. § 49.*]

2. DEATH (§ 31*)—RECOVERY — RIGHT OF CHILDREN.

Under Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), as amended by Act April 5, 1910, c. 143, 36 Stat: 291 (U. S. Comp. St. Supp. 1911, p. 1324), providing that, in case of injury, through negligence of a railroad company engaged in interstate commerce, to one while employed by it in such commerce resulting in his death, it shall be liable in damages to his personal representative for the benefit of his widow and children, recovery may be had for a child, though she be married, and irrespective of whether she was dependent on him or had the right to expect any pecuniary assistance from him.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 35–37, 46, 48; Dec. Dig. § 31.*]

3. TRIAL (§ 260*)—INSTRUCTIONS — REPETITION.

Refusal of a requested instruction as to a certain feature of the defense is proper; the main charge and other charges given having fully, clearly, and fairly presented such feature.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

4. MASTER AND SERVANT (§ 293*)—INJURY TO SERVANT—ACTION—INSTRUCTIONS.

An instruction, in an action for death of defendant's locomotive engineer from derailment of his train at a switch, held not to authorize a recovery on a mere finding of a defect in the switch, without a further finding that defendant had failed to inspect and was negligent in so failing, and that this was the proximate cause of the death.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

5. MASTER AND SERVANT (§ 265*)—INJURY TO SERVANT—NEGLIGENCE—PROOF.

While the burden is on plaintiff, in an action for death of defendant's locomotive engineer, to show negligence, yet it being shown that his train was derailed, and that this was occasioned by a defective switch, it devolved on it to show that it was not negligent in respect thereto.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908,*955; Dec. Dig. § 265.*]

6. MASTER AND SERVANT (§ 286*)—INJURY TO SERVANT—NEGLIGENCE—PROOF.

A railroad company does not show freedom from negligence as matter of law, in not inspecting, during the night, a switch from a defect in which a train was derailed, killing the engineer, by evidence that it was not its custom or that of other railroads to inspect their tracks at such time.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

7. TRIAL (§§ 240, 194*)—INSTRUCTIONS—ARGUMENTATIVE INSTRUCTIONS.

A requested instruction, being argumentative and on the weight of evidence, is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 561, 413, 436, 439–441, 446–454, 456–466; Dec. Dig. §§ 240, 194.*]

Appeal from District Court, Bell County; John D. Robinson, Judge.

Action by Mary J. McGinnis, administratrix of W. T. McGinnis, deceased, and others, against the Gulf, Colorado & Santa Fé Railroad Company. Judgment for plaintiffs. Defendant appeals. Affirmed.

Terry, Cavin & Mills and A. H. Culwell, all of Galveston, for appellant. Winbourn Pearce, of Temple, and A. L. Curtis, of Belton, for appellees.

RICE, J. W. T. McGinnis, a locomotive engineer, while in the discharge of his duty operating an engine drawing a south-bound fast passenger train out of Temple on appellant's road on the night of October 6, 1909, was fatally injured at Salinas on account of a derailment, and this suit was brought by Mrs. Mary J. McGinnis, as administratrix of his estate for the benefit of herself as surviving wife, and also for the benefit of his four children, three of whom were minors and one a married daughter, Mrs. Nelta Sanders, alleging that said derailment occurred on account of a defective switch, which appellant had negligently failed to inspect and warn deceased thereof. Defendant answered by general demurrer, general denial, and specially that at the time of the accident it was engaged in interstate commerce, and that the deceased, as its engineer, was likewise so engaged, which facts were pleaded in bar of plaintiff's right to recover, on the ground that said suit could not be maintained under the laws of this state. It likewise pleaded assumed risk, and further denied plaintiff's right to recover on the ground that it exercised reasonable care to keep its roadbed and switch in a reasonably safe condition, and had made frequent inspection of the same, and that this accident was not the result of negligence on its part; that the same occurred in the night, when it was not usual or customary to inspect the track; that the track and switch were in good condition on the afternoon before the accident; that the same was occasioned because the switch had been misplaced by some evilly disposed person, intent upon mischief. A jury trial resulted in a verdict and judgment in behalf of plaintiff in the sum of

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court June 26, 1912.

$15,000, which was apportioned by the jury awarding to Mrs. McGinnis as surviving wife the sum of $7,500, and dividing the balance equally among said four children.

Briefly stated, the facts disclose that plaintiff's decedent was the engineer in charge of appellant's south-bound passenger train out of Temple on the night of October 5, 1909, which was derailed at Salinas about 2 o'clock on the morning of the 6th; the engine and tender being thrown from the track on account whereof he received serious injuries, from which he died. It seems that the train was making some 60 miles an hour at the time of the accident, and that the switch light was so set as to indicate a clear main line track; but the switch was partly open and its points worn and defective, on account of which, in railroad parlance, the engine "split the switch," causing the wreck. It further appeared that the pitman or bridle rod was disconnected from the switch stand, and that the lug which fastened or held the same was misplaced. In support of the contention that the switch had been tampered with, evidence was offered to the effect that about dusk on the evening before a loud report or explosion was heard in the neighborhood of this switch, and that an inspection of the switch and switch stand shortly after the accident showed discolorations, as though some explosive, such as dynamite, powder, or nitroglycerin, had been recently discharged thereon. There was no evidence, however, showing that the ground or earth had been disturbed in or about the switch and ties, or any holes torn in the earth, such as would likely have been made by dynamite or other like explosive. The lug spoken of was shown to have been picked up some 240 feet from the track.

Controverting this theory, there was evidence on the part of plaintiff by persons who had also examined the switch and stand immediately after the accident, to the effect that there was no such discoloration as claimed by witnesses for defendant; and further that the pitman or bridle rod was bent, which indicated that this was occasioned by the force of the wreck, rather than the cause of it, and that it would not likely have been bent if it had been misplaced prior to the wreck. On the issue as to whether the defendant was guilty of negligence in not inspecting its track and apprising decedent of his danger, evidence was offered showing that, about 5:30 o'clock of the afternoon of the day before the accident, both a hand car and a freight train had passed over this switch in safety. It was also shown that it was not the custom of appellant, nor of any other road in this state, to inspect its track or switches in the nighttime, unless on account of some sudden emergency, such as a storm, which fact was generally known to its employés. No affirmative evidence was offered, however, showing that deceased knew of such custom; but if there had been any tampering with the switch by explosion, as claimed, this must have occurred about 6 o'clock p. m., which was a period of some eight hours before the accident, during which time it was not shown that any effort had been made to inspect or look after this switch or track. It was further shown, on the part of plaintiff, by several persons who examined the switch, that it was slightly open, estimated to be from three-fourths to half an inch, and that the switch points appeared to have been gradually worn off some 10 or 12 inches back; that this wearing away seemed to be old, as evidenced by the rust thereon; and that such conditions would occasion a wreck, by causing the engine to "split" the switch. We have only undertaken to give the salient points of the evidence on the issues thus presented; there being a mass of it on all phases of the case.

[1] It is conceded that this suit was brought under and by virtue of the federal Employer's Liability Act of April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), which was amended April 5, 1910 (chapter 143, 36 Stat. 291 [U. S. Comp. St. Supp. 1911, p. 1324]), which provides that suit to recover damages based thereon must be brought by the personal representative of the deceased for the use and benefit of the surviving wife and children of the deceased, or the other beneficiaries, in the absence of such next of kin; for which reason we think that there is no merit in appellant's contention to the effect that the statement in the petition that the suit was brought by Mrs. Mary McGinnis, as administratrix of the estate of W. T. McGinnis, deceased, for the use and benefit of herself, as surviving wife, showed that it was brought in a dual capacity; nor do we think that the statements therein as to whose benefit it was brought were improper and should be stricken out, as contended by appellant, because we believe that under this statute such allegations were certainly proper, if not necessary.

[2] Nor do we think the court erred in refusing to give appellant's special charge urging that since the proof showed that Mrs. Nelta Sanders was a married woman, and failed to show that she had any expectation of pecuniary assistance from her father, that she was therefore not entitled to recover damages on account of his death; because said statute expressly authorized the suit to be brought by the personal representative, for the benefit of the surviving wife and children of the deceased, irrespective of whether they were dependent upon him, or had the right to expect any pecuniary assistance from him.

[3] By its fifth assignment appellant asserts that the court erred in refusing to give the following special charge: "The ju-

ry is charged that if you believe that the accident was occasioned by the malicious interference with the switch stand by some evilly disposed person in the nighttime of the night on which the accident occurred, then your verdict should be for the defendant, unless you further find that the defendant knew of such interference, or knew such facts in regard thereto as would put a person of ordinary prudence on inquiry"—insisting by its proposition that the defendant was entitled to an affirmative charge presenting this defense. We think, in the absence of a charge upon this subject, that its refusal would have been error; but the court in its main charge instructed the jury that: "If you believe from the evidence that the switch at Salinas was displaced or injured in any manner by explosion or otherwise, by some person intent upon mischief, and that the same caused the accident that resulted in the death of W. T. McGinnis, and that defendant was not negligent in failing to discover the same, then you will find for the defendant." Besides this, the court gave the following special charges, covering this phase of the case: Special charge No. 8: "You are charged that the railway company is in no case the insurer of the safety of its employés; and if you find from the evidence that at the point of the accident the defendant company provided and maintained reasonably safe tracks and switches for the purpose of conducting its business in operating its freight and passenger trains, and that the accident was solely the result of an injury to the switch, caused by some evil-minded person, and not through any want of ordinary care on the part of defendant, then, if you so find, you will find for the defendant." Special charge No. 5: "You are charged that if you believe from the evidence that it was not usual or customary to inspect the switches or track in the nighttime, and that there was no circumstance known to the defendant in the exercise of ordinary care to indicate that the switch and track at the place of the accident should have been inspected in the nighttime, then the defendant would not be guilty of negligence for its failure to so inspect." Special charge No. 4: "If you believe that the deceased knew that it was not usual nor customary to have the switch stand, switches, and track inspected under normal circumstances in the nighttime, then you are charged that the deceased assumed all of the risks growing out of such failure to so inspect, and plaintiff cannot recover because of the failure of the railroad company to so inspect." It seems to us that these charges, together with the main charge, fully, clearly, and fairly presented this feature of appellant's defense, for which reason the court properly refused to give the special charge requested.

[4] The tenth assignment complains that the court erred in giving the sixth paragraph of its charge to the jury, which is as follows: "Now, if you believe from the evidence that the plaintiff Mrs. Mary J. McGinnis is the duly qualified administratrix of the estate of W. T. McGinnis, deceased, and was the wife of W. T. McGinnis at the date of his death, and that Lyla McGinnis, Laland McGinnis, and Lamar McGinnis were their minor children, and that Nelta Sanders was their married daughter, and if you further believe from the evidence that on or about the 6th day of October, 1909, in Bell county, Tex., the said W. T. McGinnis was in the employment of the defendant as a railway engineer, and as such was engaged in running one of the defendant's locomotives in the operation of one of defendant's passenger trains, and that while so employed in running said passenger train over its line of railway he ran his engine and train into a defective switch at Salinas, thereby causing the accident in question, and which resulted in the death of W. T. McGinnis; and if you further believe from the evidence that the switch point at said place had worn away, broken off, and become defective, or if you find from the evidence that said switch had become loose or open; and if you further find from the evidence that the defendant had failed to inspect its said switch and roadbed and had failed to warn W. T. McGinnis of the dangerous condition thereof (if it was dangerous and defective at the place in question at the time above specified); and if you further find that the defendant was negligent in permitting its switch to be and remain in such defective condition (if you find it was in a defective condition); and if you further find that it failed to exercise ordinary care to inspect said switch and track, and if you find that such failure, if any, was 'negligence' as that term has been heretofore defined; and if you further find that such negligence, if any, was the direct and proximate cause of the death of W. T. McGinnis—then you will find for the plaintiff and assess the damages as hereinafter directed, unless you should find for the defendant under other instructions given you in this charge."

By the first proposition thereunder it is insisted that the same imposed too great a burden upon the defendant, in that under said charge a verdict was warranted against it if the jury should find that the switch was loose or open, without regard to the cause thereof, claiming that, since it was not an insurer, its only obligation was to exercise ordinary care to see that the same was in a reasonably safe condition; second, because there was no evidence to sustain or warrant the submission of the issue as to the failure of the defendant to inspect the track; and, third, that the mere fact that the switch point had become defective was not sufficient to render the defendant liable, because such defect, if any, in and of itself was not negli-

gence as to deceased, and in order to make the same actionable it was necessary to show that the defect had existed for such length of time as that the same should have been discovered or could have been discovered by reasonable inspection.

Appellee contends that this charge is not subject to the criticism offered; that the jury were not authorized to find a verdict against the defendant merely because the switch was defective, unless they further found that defendant failed to inspect and was guilty of negligence, and that the same was the direct and proximate cause of the death of the deceased, contending that the evidence established that the switch had been defective for a long time, as was apparent from the condition of the switch points.

[5] We think appellee is correct in this respect. The charge does not authorize a recovery on the ground that the jury should merely find that there was a defect, unless they further found that the defendant had failed to inspect and was guilty of negligence in so failing, and that this was the proximate cause of the injury. It is true that the burden of proof rested upon the appellees to show negligence, before they were entitled to recover; but in the instant case it will be recalled that the proof did show a derailment, and that the same was occasioned by a defective switch. This being true, it then devolved upon the defendant to show that it was not guilty of negligence in this respect. This could be done by showing that they had exercised ordinary care to inspect the switch, and keep the same in proper condition; but, notwithstanding this, some outsider had so interfered with the same as to cause the accident. In the present case they sought to show that the track was tampered with. This issue was submitted to the jury under proper instructions; and the court likewise, in the charge above outlined, permitted a recovery on the part of plaintiff notwithstanding the switch had been interfered with, provided the jury believed from the evidence that there was a failure on the part of the defendant to exercise ordinary care to inspect the track and protect the plaintiffs' decedent from danger.

[6] The mere fact that it was not customary on the part of defendant and other railways to inspect their tracks at night, it seems to us, could not be regarded by the court sufficient, as matter of law, to discharge this burden; but the issue remained one of fact for the determination of the jury under appropriate instructions. In I. & G. N. R. R. Co. v. Johnson, 23 Tex. Civ. App. 160, 55 S. W. 772, where a brakeman was killed by the derailment of a train at a defective switch near Austin, plaintiff alleged the failure to exercise proper care, by inspection, for the discovery of the defect. The defendant in that case, as in this, claimed that the track and switch at the place of the accident had been tampered with, and that it had exercised due care, and therefore was not responsible. Mr. Chief Justice Key, then Associate Justice, delivering the opinion of the court, said: "While the burden of proving negligence on the part of appellant rested upon appellees, when it was developed by the testimony that the derailment and wreck which resulted in the death of Johnson were caused by an open switch, and that he himself was not at fault, these facts were sufficient to justify a finding of negligence against the appellant, unless it submitted testimony explaining how the switch came to be open, or at least showing that it had exercised proper care to keep the switch and track at that place in safe condition"—citing McCrary v. Railway, 89 Tex. 168, 34 S. W. 95; Washington v. Railway, 90 Tex. 314, 38 S. W. 764. Proceeding, the court says: "But leaving out of the case the theory of the switch rod breaking on account of ordinary wear and tear, and conceding that the switch was interfered with and opened by some outside person, for whose conduct appellant was not responsible, still it was liable, if the testimony fails to show that it exercised proper care and diligence to discover the state of the switch and warn the freight train of the danger. The testimony fails to show any effort by appellant, during the six hours intervening betweeen the time Powers' engine passed the switch and the time of the wreck, to ascertain the condition of the switch and track at that point."

In the case of Texas Mexican Railway Co. v. Mendez, 78 S. W. 25, the train came to a bridge about 4 o'clock in the morning of May 1, 1902, and the bridge having been consumed by fire, and the fire having gone completely out, leaving the rails thereon without support, the train was precipitated and plaintiff injured. Plaintiff testified that it was the custom of the section gang to go over and examine their section in the day, but he never saw them do so at night, and did not know whether they did so at night. A train had passed safely over the track the afternoon before. The court said: "As other known conditions, to some extent, existed in which a fire could originate, the courts cannot arbitrarily say with what frequency inspections ought to have been carried on in order to constitute ordinary care. It is unquestionably of the greatest importance for a railway company to be careful in protecting its employés as well as its passengers through inspection of its road. It will not do, as a matter of law, to say that it may send an inspector over its section, and then abstain from giving it any attention whatever for a considerable time, simply because no necessity is apparent for it. We apprehend that the origin of a defect might be so recent and the circumstances such that the court could say that the company had

not been negligent · in not discovering it in time to prevent the particular accident. But as we have no statute prescribing the railway company's duty as to the frequency of inspection, the question is generally and necessarily one for the jury to determine."

In Thompson v. G., H. & S. A. Ry. Co., 48 Tex. Civ. App. 289, 106 S. W. 912, it is said: "How often inspections of the railroad track must be made depends upon its location, the surrounding country, the character of population, and other circumstances; and, in view of the diversified facts surrounding each case, the sufficiency of such inspection is peculiarly a question of fact for the jury. This rule would not be changed by the fact that the defect in the track was caused by criminals, because the same duty to discover defects would prevail in that case as in the case of defects from any other cause. The duty to exercise at least ordinary care in detecting the defect in the track devolved upon the appellee, regardless of what may have caused the defect; and the question of whether appellee exercised such care was one of fact for the jury. We do not know when the displacement of the rail that derailed the engine took place, only that it occurred some time prior to the death of Thompson; and it was not for the trial judge to determine that the inspection and watch over the track was sufficient, even though the time of the displacement had been shown, unless it had been such a short interval between the displacement and the accident as to preclude the idea that it could have been discovered by appellee. When it is proved that Thompson was killed through the derailment of his engine by reason of the defect in the track of appellee's railway, appellants had made out a prima facie case of negligence on the part of appellee, and the burden rested on it to show that the defect in the track had been caused by the unlawful acts of trespassers, and that it had not been negligent in failing to discover the same. Appellee, and not appellants, should have established the fact of such careful inspection as the place and circumstances, and a failure to fix a time proximately when the trespassers did their work is chargeable to appellee, and not appellant."

The rule is thus stated in the case of Marcom v. Railway, 126 N. C. 200, 35 S. E. 423, by the Supreme Court of North Carolina, in a suit for damages for the death of a fireman which occurred through a derailment: "It is the duty of every railroad company to provide and maintain a safe roadbed, and its negligent failure to do so is negligence per se. That while the company is held to a very high degree of care, there must in all cases be some element of negligence to justify a recovery, and it cannot be held responsible for the wanton and malicious acts of an outsider, unless it could, by the exercise of reasonable diligence, have prevented the consequences of such act. As the law places upon the company the positive duty of providing a safe track, including the incidental duties of inspection and repair, its unsafe condition, whether admitted or proved, of itself raises the presumption of negligence. This is always the case where there is a positive duty imposed by law. The burden of proving such a failure of duty rests upon the plaintiff; but when that fact is proved or admitted, the burden of proving all such facts as are relied upon by the defendant to excuse this failure rests upon the defendant. Its contention that the accident was caused by some one for whom it was not responsible, and the consequences of whose act it could not have prevented by any reasonable degree of care, was an affirmative defense, by its very nature carrying with it the burden of proof"—citing in support of the doctrine Railway Co. v. Gaither, 43 S. W. 266; Williams v. Lumber Co., 114 La. 805, 38 South. 567; Railway Co. v. Kane, 92 Ga. 187, 18 S. E. 18, 22 L. R. A. 315. See, also, Railway Co. v. Bradt, 57 Tex. Civ. App. 82, 122 S. W. 59; Railway Co. v. Sandlin, 57 Tex. Civ. App. 151, 122 S. W. 62.

[7] The twelfth assignment complains that the court erred in failing to give appellant's special charge defining "ordinary care." This charge we think was properly refused: (1) Because the court had given a correct charge upon the subject; and (2) because the charge requested was argumentative and upon the weight of evidence.

The remaining assignments, in various respects, assail the evidence as being insufficient to sustain the verdict. We have carefully considered the entire record, in connection with these several assignments; and while there is some evidence tending to show that the switch had been interfered with, and that some care had been exercised for the protection of the track, still, as there was a conflict in the evidence as to both these issues, we are not inclined to disturb the judgment on this ground, since, under appropriate instructions, the jury have passed upon these issues, and the trial court, who was in better position than we are to determine the truth or falsity of the evidence to sustain or defeat the respective contentions, has declined to interfere therewith.

Finding no error in the proceedings of the trial court which will justify us in setting aside its judgment, the same is in all things affirmed.

Affirmed.