## Stearns Coal & Lumber Company v. Williams.

(Decided May 12, 1915.)

### Appeal from McCreary Circuit Court.

1.  Master and Servant—Personal Injury—Injury From Electric Wire
    —Instructions.—In an action by a servant against his master to
    recover damages for personal injuries occasioned by an alleged
    ,defect in the arrangement of ıts electric wires, an ınstruction
    telling the jury that it was the duty of ʌhe defendant to exercise
    the utmost care and skill to keep its wires free from danger is
    not error.
2.  Master and Servant—Personal  Injury—Damages—Measure  of
    Damages—Instructions.—In an action for damages for personal
    injuries, an instruction authorizing a recovery by plaintiff for the
    reduction or impairment of his power to earn money at his trade
    or occupation is prejudicial error.

J. N. SHARP for appellant.

DENTON & FLIPPIN and HENRY C. GILLIS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Reversing.

In this action for damages for personal injuries
against defendant, Stearns Coal & Lumber Company,
plaintiff, F. W. Williams, recovered a verdict and judg-
ment for $1,200.00. Defendant appeals.·

At the time of the accident, which occurred October
19th, 1911, plaintiff was an electrician in defendant's
employ. Defendant's foreman ordered him to take down
a wire from the tops of certain poles carrying two elec-
tric light wires on brackets. Before· proceeding with
the work he was assured by the foreman that the cur-
rent had been cut off from the electric light wires. It
appears, however, that there was some defect in the ar-
rangement of the wires and a heavy current of electricity
used on a power line was permitted to flow through the
electric light wires. While on the pole plaintiff's back
came in contact with a bolt which held a brace to the
pole and one hand came in contact with one of the elec-
tric light wires. Connection was formed from the light
wire through Williams' body by means of the bolt and
brace and thence into the ground through a guy wire
which had been permitted to come in contact with the
brace. When Williams touched the light wire he re-
ceived a shock. He says that his left arm and a place
on his back about the size of a dollar and a place on his

side about six inches long were blistered. It did not break the skin of his hand, but one crack came on his forefinger. In the struggle his right hand came in contact with the other light wire, which was also bare, and his feet were jerked from the pole. With one hand gripping one of the wires and the other hand on the other wire he hung suspended in the air several minutes. He says that during this time he suffered intense pain. After a while the current was turned off and he released his grip and descended the pole. Plaintiff says that he was able to do only light work after that time and that a promised increase of wages was not kept because of his inability to do work. At the time of the trial, which occurred a year and eight months after the injury, plaintiff claims that he was unable to do any work. He claims that before the accident he weighed about 200 pounds. After the accident he immediately began to lose flesh, and his weight was reduced about 30 pounds. He says that the wire was charged with about 575 volts of electricity. The physician says that he examined him and found him suffering from traumatic neurasthenia. He also claims that as a result of the electric shock he has varicocele. On the contrary, it is shown that after the injury plaintiff stated to several persons that he was not badly hurt. His room-mate says that he never complained of suffering from the injury until after he made up his mind to bring suit. The physician who examined him says that he saw no burns of any kind on his body. Defendant's timekeeper shows that plaintiff worked 17 days and 6 hours during the month of December; in January he worked 23 days and 7 hours; in February he worked 19 days and 7 hours; in March he worked 30 days. Up to this time he had received $2.50 per day. His wages were then raised. During the month of April he worked 30 days at $3.00 per day; in May he worked 25 days and 8½ hours; in June he worked 26 days and 7 hours; in July he worked 11 days and 11 hours. From the first of April on he received $3.00 per day. Three employes who worked with plaintiff stated that during this time he did all kinds of work, both light and heavy. An electrical engineer of several years' experience made a test and claims that only .0057 of one ampere passed through the body of plaintiff and this was without destructive force. Other witnesses testified that there had been no change in plaintiff's weight.

The court did not err in telling the jury, in instruction No. 1, that it was the duty of the defendant to exercise the utmost care and skill to keep its wires free from danger. Lancaster's Admr. v. Central City Light & Power Co., 137 Ky., 355.

The instruction on the measure of damages authorized a recovery by plaintiff for the mental and physical suffering endured by him by reason of his injuries caused by coming in contact with the wires charged with electricity, "and for the reduction or impairment of his power to earn money at his trade or occupation." While it is true, of course, that evidence of plaintiff's earning capacity in his particular profession or trade is admissible and may be considered by the jury in determining how much his earning capacity has been impaired, yet it is not proper to confine the recovery to the particular profession or occupation in which plaintiff may be engaged at the time of the injury. Though a party may be disqualified from following his usual trade or occupation, yet, as a matter of fact, he may be able to follow some other trade or occupation where the remuneration would be equal, if not greater, than that which he had formerly received from his usual occupation or trade. For this reason, the instruction authorizing a recovery "for loss of capacity to perform the kind of labor for which he was fitted" was condemned in the case of Macon v. Paducah Ry. Co., 110 Ky., 680. It is insisted, however, that even if the instruction complained of was erroneous, it was not prejudicial to the defendant. With this contention we are unable to agree. The jury may have concluded from plaintiff's evidence that because of his alleged nervous condition, which he claims resulted from his injuries, he was not able to follow his usual occupation and have fixed the recovery on that theory, whereas, though unfitted for that occupation, plaintiff's earning capacity in some other trade or occupation may not have been appreciably diminished. We, therefore, conclude that the instruction was erroneous. On another trial the court will substitute for the language referred to the following: "and for the permanent reduction of his power to earn money."

In view of the foregoing conclusion, we deem it unnecessary to determine whether or not the verdict is excessive.

Judgment reversed and cause remanded for a new trial consistent with this opinion.