## Cincinnati, New Orleans & Texas Pacific Railway Company v. Jones' Administrator.

(Decided October 30, 1917.)

### Appeal from Lincoln Circuit Court.

1. **Master and Servant—Evidence—Rules—Parol Evidence as to Meaning of.**—Generally speaking, written rules are the best evidence, but if the witnesses introduced by the plaintiff have not read the rules and cannot say that a book of rules exhibited contains the rules promulgated by the company, then they may, if qualified to speak on the subject, do so independent of the written rules.

2. **Master and Servant—Rules of Master—Evidence as to.**—Where it appears that a book of rules was not introduced by the plaintiff because the witnesses did not know what such a book contained on the subject under investigation, the witnesses, if qualified from experience or observation to testify on the subject, had the right to do so independent of the written rules.

3. **Master and Servant—Liability of Master for Death of Servant Caused by Failure of Engineer to Observe Flag.**—Where a flag was put out to protect a crew of section men, but the engineer paid no attention to the flag and did not give warning of the approach of the train or reduce its speed, the company was liable in damages for the death of one of the section men who was killed by the negligence of the engineer.

4. **Master and Servant—Liability of Master Where Servant Put in Peril by Negligence of Master Had Two Means of Escape But Adopted Wrong One.**—Where a section-hand was put in peril by the negligence of the company, he was only required to exercise in an effort to escape the danger such care as a person of ordinary prudence would have exercised.

5. **Death—Damages—Instructions on Measure of—Present Value—Federal Employers' Liability Act.**—Where an instruction did not lay down any criterion by which the present cash value of damages should be fixed, but did direct that the assessment should be

equivalent to the present cash value of the pecuniary loss, it was sufficient.

6. Appeal and Error—Instructions—Error In Not Grounds for Reversal Unless Prejudicial.—An erroneous instruction given by the court will not be reversible error unless it appears that the giving of it was prejudicial to the substantial rights of the complaining party.

7. Appeal and Error—Death—Damages—Error in Instructions—When Not Prejudicial.—Where the damages assessed by the jury are not excessive, an instruction on the subject of damages, although erroneous, will not constitute reversible error.

JOHN GALVIN, GALVIN & GALVIN and K. S. ALCORN for appellant.

GEORGE D. FLORENCE, EMMETT PURYEAR and ROBERT HARDING for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This is the second appeal of this case. In the former opinion, which may be found in 171 Ky. 11, the facts are stated very fully, and it will be necessary to repeat only such of them here as will serve to point out the grounds upon which a reversal is sought.

Jones was a member of a crew of section men engaged in repairing the tracks of the appellant company, and in the course of this work he was using a heavy jack. The place where the men were at work was protected from passing trains by a green flag put out on each side a sufficient distance to enable the engineers on approaching trains to reduce the speed, give warning and keep a lookout, and this was the purpose of the flags. While Jones was engaged at work with this jack, a passenger train, running at a high rate of speed, approached without giving any warning by either whistle or bell, and a curve in the track prevented the section men from seeing it until it was within a few hundred feet of where they were working. When the presence of the train was discovered Jones was standing on the east side of the track in a ditch between the track and a high embankment. The foreman called out to the men to get the jacks out of the way and Jones, in an effort to do so, was in danger of being hit by the approaching train. Seeing this, the foreman hallooed to him to let the jack go and get out of the way. Upon receiving this direction Jones let go the jack and attempted to cross to the west side of the track, and while doing so was struck by the train and killed.

On the trial from which the first appeal was taken the evidence was substantially the same as the evidence on the trial from which this appeal was prosecuted, and although it was vigorously urged on the former appeal that a directed verdict should have been ordered in behalf of the railway company, we held that there was sufficient evidence to take the case to the jury and sustain a verdict, but reversed the judgment appealed from on account of errors in the instructions.

On this appeal it is urged as ground for reversal that the trial court committed error in permitting members of the section crew to testify that the flags had been put out that morning when the men went to work, which we may here observe was about an hour before the accident, and to give evidence as to the purpose for which the flags were put out and the duty of the engineer when he discovered their presence, as he should have done if he had been keeping a proper lookout.

There was no contradiction whatever in the evidence on this subject offered by these witnesses who were qualified to speak because they had been working in the capacity of section men for the railway company a long time and often had occasion to put out flags to protect them from passing trains, and they also knew from personal observation what course engineers pursued who gave attention to these flags. The objection, however, to their evidence is put upon the ground that the book of rules issued by the company, and which presumably contained rules directing when these flags should be put out and for what purpose, and stating the duties of engineers when they saw them, was not offered as evidence. It appears from the evidence that the book of rules was not introduced by the plaintiff because the witnesses did not know what the book of rules contained on the subject under investigation as they had never been furnished with a book of rules, nor had they ever read the rules, but they did know, as we have said, from personal observation and experience, when and for what purpose these flags were put out and the manner in which engineers who saw them ran their trains.

Under these circumstances, we think the evidence of these witnesses was entirely competent, and that it was not necessary that the plaintiff in the case should offer to introduce the book of rules issued by the company. If the company had rules on this subject, and the evidence of these witnesses did not correctly state the substance

of them, the company should have introduced the written rules; but failing to do this, it is not in a position to complain of this evidence. And it may here be remarked that no book of rules or rule was offered in evidence by the company, nor did the engineer or fireman testify.

Generally speaking, written rules are the best evidence, but they are not the only evidence that is admissible, and if the written rules are not in the possession of the plaintiff, or if the witnesses introduced by him have had no occasion to read or examine the rules or know about them, or cannot say that the rule or book of rules exhibited is the rule or book of rules promulgated by the company, then they may, if qualified to speak on the subject, do so independent of the rules. If the company had a rule on the subject we are discussing, it is fair to infer that the rule provided that section men engaged in the character of work these men were doing should put out flags at a sufficient distance to warn passing trains of the presence of the men, and that the engineer upon seeing the flag should reduce the speed of his train and have it under control and give warning of its approach.

It is also a fair inference from the evidence that if the engineer had been keeping a proper lookout he could and would have seen this flag and have known that a gang of men were working around the curve and could, if he had been attentive to his duties, have given warning of the approach of the train and reduced its speed. It is furthermore a reasonable inference from the evidence that if the engineer had given warning of the approach of the train and reduced the speed of the train, Jones would not have been struck or killed, because he would have had ample time to have gotten his jack away from the track and put himself in a safe place. So that in our opinion the real cause to which the death of Jones may be attributed was the negligence of the engineer, although it is insisted by counsel for the company that the death of Jones was brought about by his own negligence in attempting to cross the track in front of the engine, and therefore the jury should have been instructed to return a verdict for the railway company.

This argument on the same evidence was made on the former appeal, where it was contended, as it is here, that Jones in attempting to remove the jack when the train was so near and in trying to cross the track, did that which a prudent person would not have done under the circumstances, and hence assumed all the risk of the

danger which attended his action. But in answer to this the court said in the former opinion.

"He went to the place where the jack was and attempted to remove it at the peremptory behest of the foreman, who was his superior in authority, and whose orders it was his duty to obey, unless the danger of so doing was so obvious and apparent that a man of ordinary prudence would, under like circumstances, have refused to obey the order. Unless the danger was so apparent and obvious that an ordinarily prudent man, under like circumstances, would have refused to have obeyed, there was no assumption of risk by decedent in so doing. . . .

"The appellee is not precluded from a recovery, if it appears that through the negligence of appellant, he was placed in a perilous situation, which made immediate action necessary upon his part to escape danger, and through an impulse of fear or from being bewildered by the exigencies of the situation, he failed to choose the safe course to pursue and pursued a course which ended in his death, while the other course would have led to his safety. If decedent acted upon a reasonable apprehension of peril from remaining or going to the east side of the track and acted as an ordinarily careful man, under like circumstances, would have acted, he could not be charged with having assumed the risk of attempting to cross the track in front of the engine, nor with contributory negligence in so doing."

On this trial the court told the jury, in substance, that if they believed from the evidence that the defendant's employes and servants in charge of the train mentioned in the evidence, carelessly and negligently ran the same at a high and dangerous rate of speed to the place where plaintiff's intestate was engaged in the discharge of his duties; and further believed that plaintiff's intestate was then, in obedience to the orders of his superior, engaged in the discharge of his duties, and that by the act of the defendant's employes in charge of the train he was placed in a situation of peril and danger, and in an effort to escape therefrom, and while using such care as an ordinarily prudent man similarly situated might use, he went upon the track and was struck and killed, they should find for the plaintiff.

They were further instructed that if they believed that Jones was put in peril by the negligence of the engineer and the foreman in charge of the crew of which

he was a member, then he had the right to use such means as appeared to him under the circumstances to be reasonably necessary to avoid such danger, and if while using such means and acting as a person of ordinary prudence might reasonably act, he was injured and killed, it was immaterial that if he had followed some other course he might have escaped injury.

They were further instructed that if they believed from the evidence that Jones went upon the track in front of the train, which he knew was approaching, and that the risk of being struck was so obvious that a person of ordinary prudence under like circumstances and similar conditions would not have gone upon the track, they should find for the defendant. They were also instructed as to the measure of damages in conformity to the rule laid down in many cases by the Supreme Court of the United States prior to its ruling in the case of C. & O. Ry. Co. v. Kelly, 241 U. S. 485, 60 Law Ed. 1117.

Passing for the present comment on the instruction on the subject of the measure of damages, we think the other instructions given by the court fairly submitted to the jury the law applicable to the case.

According to our view of the case, the life of Jones was put in peril by the negligence of the engineer, and if in an effort to escape from the peril in which he was placed by this negligence he exercised such care under the circumstances as a person of ordinary prudence would have exercised, there should have been a recovery against the railway company, unless the jury believed that when Jones attempted to cross the track the risk of being struck by the train was so obvious that a person of ordinary prudence under like circumstances would not have done so. There was no dispute in the evidence about the fact that the engineer was negligent. The only disputed issue in the case was whether Jones was negligent, and this issue was submitted to the jury and decided against the company.

Counsel for the railway company offered the following instructions:

"No. 1. If you believe from the evidence that George Jones was warned of the approach of the train in time by the exercise of ordinary care to get to a place of safety, then the law is for the defendant, and you shall so find.

"No. 2. If you believe from the evidence in this case that when the decedent, George Jones, went upon the

track in front of the train, that he knew that the train was approaching and that the risk of his being struck was so obvious that a person of ordinary prudence would have known and appreciated such risk of being struck, then the law is for the defendant railroad and you shall so find.''

Instruction No. 2 was, we think, fully covered by the instructions given, and instruction No. 1 was properly refused because it was based upon a part of the evidence as to what the foreman said to Jones immediately before he was struck and entirely ignores other directions given to him at the same time by the foreman. For example, the foreman first told him to get the jack out, and while Jones was attempting to do this, the fast approaching train was drawing near, and when it was only a short distance away, the foreman says that he told Jones two or three times to get back and let him get the jack out, and that in obedience to his orders Jones did let the jack go and was attempting to cross the track when he was struck by the train. So that upon this point the negligence of Jones, if any, consisted in his attempt to cross the track in front of the train and not in failing to let the jack go. The jury, however, found, under proper instructions, that Jones was not guilty of negligence in attempting to cross the track in front of the train.

On the subject of the measure of damages the court instructed the jury that ''If your finding be for the plaintiff you will find such a sum in damages as you believe from the evidence will fairly and reasonably compensate the dependent members of the decedent's family for their pecuniary loss, if any, by reason of the destruction of his power to earn money, which should be equivalent to the present cash value of the probable pecuniary assistance, if any, which the dependent members of his family would have received from him had he lived. . . .''

The criticism urged to this instruction is that it did not follow the rule laid down by the Supreme Court of the United States in the case of C. & O. Ry. Co. v. Kelly, *supra*. That case was tried in one of the circuit courts of this state, and the judgment of the circuit court having been affirmed by this court, it was taken on a writ of error to the Supreme Court of the United States. In the lower court the trial court instructed the jury that if they found for the plaintiff ''they should fix the damages at such sum as would reasonably compensate the dependent members of Kelly's family for the pecuniary loss,

if any, shown by the evidence to have been sustained by them because of Kelly's injury and death," and if they found for the plaintiff they should first find "a gross sum against the defendant which must not exceed the probable earnings of Matt Kelly had he lived. The gross sum to be found for plaintiff, if the jury find for the plaintiff, must be the aggregate of the sums which the jury may find from the evidence and fix as the pecuniary loss above described, which each dependent member of Matt Kelly's family may have sustained by his death."

In that case counsel for the railway company saved proper exceptions to the giving of the instructions and offered an instruction telling the jury that if they found for the plaintiff they should "fix the damages at that sum which represents the present cash value of the reasonable expectation of pecuniary advantage . . . to said Addie Kelly during her widowhood and while dependent, and pecuniary advantage to said infant children while dependent and until they become twenty-one years of age."

In considering the instructions given and refused, the Supreme Court reversed the cases because the instructions given did not submit to the jury the question as to the amount of damages that would represent the present cash value of the reasonable expectation of pecuniary advantage that the dependents of Matt Kelly lost by his death, and said: "The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased. . . . So far as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future. Ordinarily a person seeking to recover damages for the wrongful act of another must do that which a reasonable man would do under the circumstances to limit the amount of the damages. . . . And the putting out of money at interest is at this day so common a matter that ordinarily it can not be excluded from consideration in determining the present equivalent of future payments.

"We are not in this case called upon to lay down a precise rule or formula, and it is not our purpose to do

this, but merely to indicate some of the considerations that support the view we have expressed that, in computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only.''

It will be observed that in the instructions given by the trial court in this case on the subject of the measure of damages, the court did not undertake to lay down any rule by which the present cash value of the damages, if awarded, should be ascertained, but did tell the jury that if they found for the plaintiff they should find such a sum in damages as would fairly and reasonably compensate the dependent members of decedent's family for their pecuniary loss, if any, by reason of the destruction of his power to earn money, which should be equivalent to the present cash value of the probable pecuniary assistance which they would have received from him had he lived. So that the idea, that the damages awarded, if any, should be the equivalent of the present cash value of the reasonable expectation of pecuniary advantage that the dependents would have derived from the decedent if he had lived, was embodied in the instruction. And we are inclined to think that this submission sufficiently complied with the directions of the Supreme Court, because the jury, by this instruction, were limited in the amount of damages to the present cash value of the pecuniary assistance that the dependent members of the decedent's family would have received from him had he lived.

It is true that this instruction did not give the jury any criterion by which they should estimate the present cash value of the sum to be awarded as damages, nor do we know that it was necessary that they should have been specifically instructed upon this point. In fact, it would be rather difficult to draft an instruction furnishing a formula as to the present cash value that would be helpful to the jury or assist them to fix the damages according to this measure with any sort of accuracy. When juries of plain men in cases like this come to determine the amount of damages that should be awarded, they cannot well be intelligently guided by scientific or mathematical

rules. In the very necessity of things they must take a general survey of the case and determine from all the facts and circumstances before them what would be reasonable and fair compensation to the dependents for the pecuniary loss sustained by them, and when they are given a general direction to fix the damages at such a sum as would be equivalent to the present cash value of the loss sustained, and are assisted by such competent evidence as the parties may offer, they must be trusted to ascertain in their own way what the present cash value of the loss would be.

But if we should be mistaken about the sufficiency of this instruction as a compliance with the ruling of the Supreme Court in the Kelly case, we are yet satisfied that the judgment should not be disturbed on account of the alleged excessiveness of the damages for other reasons.

Counsel for the railway company did not offer or ask any instruction on the subject of the measure of damages, or any instruction that would point out a method by which the jury might intelligently arrive at the present cash value of the damages they might award. All that was done was to save an exception to the instruction given and offer instructions 1 and 2 heretofore noticed. Now we think that if counsel representing the railway company desire to have the question as to the present cash value of the damages that may be awarded, ascertained or determined by the jury according to technical or mathematical rules, they should prepare an instruction upon this subject. It is too late after a verdict and judgment to complain that such an instruction was not given by the court when it does not clearly appear that the assessment was excessive or substantially more than would have been awarded if specific instructions on the subject of the present cash value had been given.

Thus it was said in L., H. & St. L. Ry. Co. v. Roberts, 144 Ky. 820, that "If the court undertakes upon its own motion or upon request of either of the parties to instruct the jury upon the law applicable to all the issues, or, in other words, to give the whole law of the case, then the court should properly instruct the jury upon each issue that it undertakes to instruct concerning; and if an erroneous instruction is given that prejudices the substantial rights of the complaining party and proper exception is saved, it will be reversible error."

It will be noticed from this that an erroneous instruction given by the court will not be reversible error un-

less it appears that the giving of it prejudices the substantial rights of the complaining party. And so if we should assume that the instruction on the subject of the measure of damages was erroneous, it would not be ground for reversal unless it appeared that it prejudiced the substantial rights of the railway company. Looking at the matter from this standpoint, we are satisfied that the instruction did not prejudice the substantial rights of the complaining party, because the verdict of the jury and the judgment thereon was not, under the facts and circumstances of the case, so excessive as to justify us in reaching the conclusion that the jury was influenced to give the amount awarded on account of error in the instructions. We have often ruled that errors in instructions will not amount to reversible error unless it appears that the assessment of damages by the jury was brought about by the error; or, in other words, that the jury would not have awarded the sum they did if they had been correctly instructed. I. C. R. R. Co. v. Skinner, 177 Ky. 62; L. & N. R. R. Co. v. Grimes, 150 Ky. 219.

Applying now this wholesome rule to the facts and circumstances of this case, it does not appear to us that the error in the instruction, if there was one, influenced the jury to make a larger assessment of damages than they would have made if they had been instructed specifically and accurately as to what sum they might award as the present cash value of the loss sustained.

By the negligence of the railway company the decedent lost his life in July, 1913, and this suit was brought in January, 1914, now nearly four years ago. At the time of his death he was 47 years old and had, according to the mortuary tables, a life expectancy of 28 years. He was a sober, industrious, saving man, with a family consisting of a wife and four infant children, entirely dependent on his labor for support, and to their support he contributed all his earnings.

In view of all this, we do not think that a judgment for nine thousand dollars, the amount awarded, was excessive or that the assessment of it was prejudicial error.

Wherefore, the judgment is affirmed.