# Chesapeake & Ohio Railway Company v. Maggard's Administrator.

# Maggard's Administrator v. Chesapeake & Ohio Railway Company.

### (Decided December 16, 1921.)

## Appeals from Floyd Circuit Court.

1. **Exceptions, Bill of—Filing After Adjournment.**—If time is given till a fixed day of the trial or succeeding term within which to prepare and file bills of exceptions and the court should for any cause adjourn the term to a day beyond that fixed in the extended time, the one obtaining the leave may either file his bill of exceptions with the clerk of the court or may file it in court upon its reconvening though beyond the time given, since the adjournment automatically extends the time.

2. **Railroads—Employers' Liability Act—Suit by Dependent Parent.**—Under the Federal Employers' Liability Act a dependent parent of an adult child cannot recover compensation by way of solatium for grief or wounded feelings because of the death of the child, but the compensation in such cases is limited to the pecuniary loss which the dependent was receiving or had a reasonable expectation of receiving from the deceased child, and the recovery should not exceed the present cash value of such loss.

3. **Railroads—Excessive Damages.**—The sole dependent was a father who was 67 years of age and who had but slightly more that eleven years' expectancy. The deceased was a son 27 years of age and a telegraph operator. When performing duties near to his father's residence he boarded there and contributed from fifteen to twenty dollars per month and also contributed to his father's clothing not exceeding thirty dollars per year: Held, that a verdict in the suit by the administrator for the benefit of the father for $4,000.00 was excessive.

4. **Railroads—Joint Tort Feasors—Dependency.**—Where dependency exists so as to authorize a recovery it may not be affected by the amount of property held by either the dependent or the deceased, and the amount of the recovery from a joint tort feasor with the defendant, where it was for the benefit of the estate of the deceased servant and not for his dependents, can not be deducted from the entitled recovery under the liability act. And this is true although the dependent for whose benefit the suit was brought might, under the existing facts, inherit the entire judgment collected from the joint tort feasor of the defendant railroad company or carrier.

KIRK & KIRK and WORTHINGTON, COCHRAN, BROWNING & REED for C. & O. Ry. Co.

S. G. FERGUSON and WHEELER & WHEELER for the administrator.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing the judgment in the first case, and affirming the one in the second case.

W. Harrison Maggard, a single man about 27 years of age, was employed by defendant, Chesapeake & Ohio Railway Company, as night telegraph operator at its depot station in Prestonsburg, Ky. At about 8:45 o'clock on the evening of March 8, 1916, which was nearly two hours after he had gone on duty for the night, he undertook to signal a passing freight train (which was a part of his duties) and in doing so he used a swinging electric light suspended from the ceiling and hanging over the desk or table at which he was at work, and after giving with it the necessary signals to the engineer, which the latter could observe through one of the windows at the end of the table (or while he was giving the signals, the evidence not being clear), he touched with his other hand an iron lever by the side of his seat in front of the table and received an electric shock of sufficient voltage to kill him almost instantly.

His father qualified as his administrator and brought suit under the Federal Employers' Liability Act to recover the pecuniary loss which *he* sustained as sole dependent of his deceased son, there being no other legal dependents surviving him. Later, another suit was filed by plaintiff against the Prestonsburg Electric Light Company, seeking to recover under our statute damages to the *estate* of the decedent for the destruction of his power to earn money, in which, of course, no question of dependents was involved. The electric light company, under a contract with the railroad company, furnished the current with which the depot was lighted and also the current by which the signals on the semaphore were operated and which was done by the manipulations of a lever extending up from the floor of the depot by the side of the chair occupied by the agent whose duty it was to give the signals. That suit was settled before the trial of the one against the railroad company, by the terms of which the defendant therein paid to plaintiff the sum of $4,000.00, but it was expressly stipulated that it was only in settlement of the liability of the electric light company and did not "include or relate to any recovery sought by plaintiff for the statutory beneficiaries of said decedent against the Chesapeake and Ohio Railway Company."

Upon a trial of the action against the railroad company there was a verdict in favor of plaintiff for the sum

of $12,000.00, to be credited by the $4,000.00 received by plaintiff from the electric light company in settlement of the suit against it, making a net verdict in favor of plaintiff for the sum of $8,000.00. A new trial of the case, given on motion of defendant, resulted in a verdict in favor of plaintiff for $8,000.00 credited by the same sum received from the light company, which was a net verdict in plaintiff's favor of $4,000.00. Defendant's motion for a new trial was overruled and it obtained leave until the 15th day of the next term of the court in which to prepare and file its bill of exceptions. The trial and the extension order referred to was during the February, 1919, term of the court. The next regular term convened on the third Monday in May of that year, and the last day upon which the bill of exceptions could be filed under the time given was on June 4, and the record shows that on that day defendant tendered, moved and offered to file its bill of exceptions, but time was given for the plaintiff's attorney to examine it, and the motion to file it was passed for that purpose, and on a later day of the term it was sustained and the bill of exceptions was filed. After the adjournment of that term and at the next succeeding one, plaintiff gave notice and moved the court to expunge from the record the order of June 4, 1919, and the others following it relating to the filing, upon the ground that as a matter of fact there was no court in session at either of said times. Upon a hearing, at which evidence was introduced and which has been brought here, the court overruled the motion to expunge either of those orders, and the second appeal above questions the propriety of that ruling. A motion was also made in this court to strike the bill of exceptions from the transcript, which motion is based upon the same ground.

Without stopping to inquire whether the verity of the record could be impeached by extraneous testimony in the manner adopted, we are convinced that from other facts appearing in the record the court properly overruled plaintiff's motion, and which conclusion also requires us to overrule the motion made for the same relief here. It appears *from the record* that for some cause, not clearly shown, the court, upon convening its May term, entered an order adjourning it until June 4, 1919, and that on that day there was an adjournment till June 17th, at which defendant again produced and offered to file its bill of exceptions, to which plaintiff objected and the court took time and did not act thereon

until June 20, when it was filed.    According to the orders
appearing, defendant tendered its bill of exceptions with-
in the time given it, but plaintiff's counsel insist that as
a matter of fact the court was not in session from the
third Monday in May until the 17th day of June, to which
day the adjournment as they contend was actually made.
But, if such was the fact, and it was so shown by the
record, defendant had the right during the interim cov-
ered by the adjournment to lodge with the clerk of the
court its bill of exceptions at any time within the leave
given for that purpose and the filing with the clerk would
have the same effect as if it was tendered in open court.
City of Henderson v. Kentucky Peerless Distilling Co.,
161 Ky. 1.    Moreover, in the case of Eubanks v. Common-
wealth, 184 Ky. 126, we held that an adjourning order
to a time beyond that given within which to file a bill of
exceptions had the effect to automatically extend that
time so that it could be filed after the court convened pur-
suant to the order of adjournment.    It is therefore mani-
fest that, treating the order involved in the second case
above as one from which an independent appeal might be
prosecuted, the court properly overruled the motion
there involved, and the same conclusion necessarily re-
sults in overruling the motion made in this court to
strike the bill of exceptions from the record.

  We come now to briefly consider the appeal upon the
merits of the questions involved.    That the testimony
was amply sufficient to support the verdict of the jury
finding defendant guilty of negligence toward deceased
and which resulted in his death, clearly appears from the
record.    In the afternoon of the day upon which deceased
met his death a traveling man by the name of Bently cas-
ually touched the lever by which the semaphore signal
was operated and when he touched a telephone over or
near the desk with his other hand he received a severe
shock, which rendered him insensible for a while and it
was some hours before he was sufficiently restored so
that he could depart for his home.    The regular station
agent knew of this fact and one of defendant's employes,
whose duty it was to look after such matters, soon ap-
peared upon the scene, and after a time he discovered
that the wiring of the building, through which flowed the
current from the Pestonsburg Electric Light Company,
was excessively overcharged, and that it was because of
the overcharged wire conveying the current to the sema-
phore signal that the stranger was shocked in the after-

noon, and he thereupon disconnected that wire from the lever, which left the semaphore signal in a condition that it could not be operated by the agent or telegraph operator, whose duty it was to give signals.  Nothing else, however, was done towards removing the danger from the excessively charged wires in any other part of the building, and there is but little, if any, evidence to show that decedent when he assumed his duties at about seven o'clock that evening knew of the dangerous current in the building.  The company took no steps after learning of the danger to shut the current off from the building and supply it with other lights, but contented itself, as we have seen with only disconnecting the wire with the semaphore signal.  There is considerable evidence that there were no lanterns in the building at the time decedent was killed or after he went on duty, and he had nothing with which he could give the necessary signals, except the swinging electric light; and it is testified to by at least two witnesses, and not positively contradicted by any, that it was customary to give signals with that light, and that the practice had been frequently indulged in.  Under this brief *resume* of the testimony there is certainly no ground to contend that there was no evidence of negligence or that decedent assumed the risk or was even guilty of contributory negligence.  At any rate the evidence fully supports the verdict on these matters and it is far from being flagrantly against the testimony.  Nor do we find any error in the instructions (except against plaintiff as hereinafter referred to) or in the admission or rejection of testimony and the verdict cannot be disturbed for any of these reasons.

A more serious question is the one raised by the complaint of the size of the verdict.  In this connection it is insisted that, in estimating or calculating the present pecuniary value of plaintiff's dependence on the deceased, the $4,000.00 received by him as administrator should be taken into consideration.  In other words it is insisted that that sum, under the facts of the case, was more than sufficient to compensate him for his pecuniary loss as sole dependent and for that reason he was not entitled to recover any amount against the railroad company; but this contention is manifestly wholly unfounded. The collection of that sum was in settlement of a suit authorized by section 241 of the constitution and section 6 of the statutes and to be distributed as directed in the latter section. The right to maintain it does not depend

upon the existence of any of those distributees. The recovery in the two classes of cases is for entirely different purposes. If the decedent had left surviving him none of the distributees named in the section of the statute, the action would still be maintainable. The case is not different from one where the deceased carried a policy on his life for the benefit of the dependent entitled to the recovery under the Federal Act, and surely it could not be said that the amount of the pecuniary loss under the act could be credited by the insurance, or if the latter covered the entire loss that no recovery could be had; and the court erred in authorizing the jury by its instructions to credit its verdict in this case by the $4,000.00 paid by the electric light company.

In Thornton's Federal Employers' Liability Act, 3rd edition, section 169, it is said: "But the fact that the beneficiaries are wealthy, will not necessarily defeat a recovery;" and in section 173 it is said: "The amount of property left by the deceased is not a subject of inquiry, nor the pecuniary resources of the widow or next of kin or their unfortunate condition." So, that the only question for our determination in this branch of the case is whether the judgment for $4,000.00 against defendant was excessive under the facts of the case, eliminating all consideration of the amount collected from the electric light company.

The rule is well settled by a number of opinions from the Supreme Court of the United States, and which this court, as was its duty to do, has followed, that compensation under the Federal Act can be recovered for only the *present value* of the *pecuniary loss* which the dependent for whose benefit it is brought has sustained on account of the death; no compensation by way of solatium for the grief and wounded feeling of the beneficiaries is taken into consideration. Thus, in the case of American Railroad Company of Porto Rico v. Didrickson, 227 U. S. 145, the Supreme Court said: "The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employe. The damage is limited strictly to the financial loss thus sustained." Other cases from the same court so holding are: Michigan Central Railroad Co. v. Vreeland, 227 U. S. 59; Gulf, etc. Railroad Co. v. McGinnis, 228 U. S. 173; North Carolina Railroad Co. v. Zachary, 232 U. S. 248; C. & O. Railway Co. v. Kelly's Admr., 241

U. S. 485, and C. & O. Ry. Co. v. Dwyer's Admr., idem 492. In the two last cases it was also held that the verdict should not exceed the present value of the total amount of the pecuniary loss sustained. This court has applied the same rule in the cases of Louisville & Nashville Railroad Co. v. Johnson, 161 Ky. 824; Pittsburg, C. & C. Railroad Co. v. Collard's Admr., 170 Ky. 239, L. R. A. 1918E, 273; Louisville & Nashville Railroad Co. v. Thomas' Admr., idem 145, and C., N. O. & T. P. Ry. Co. v. Jones' Admr., 177 Ky. 485.

In construing the statute the courts hold that if there are no persons coming within any of the classes of dependents named in the statute no action can be maintained for the death of the servant, regardless of the negligence of the master in producing it. Thornton's work, *supra,* section 157, Illinois Central Railroad Co. v. Doherty's Admr., 153 Ky. 363, and cases referred to therein. As a corollary to this proposition, and which will be found stated in some of the opinions *supra,* although there may be a member or members of any one of the near related classes of dependents contained in the statute, yet if he or she sustained no pecuniary loss the action can not be maintained by the administrator for his benefit, or if any, nothing but nominal damages are recoverable.

The only proof in this case upon the question of pecuniary benefits to plaintiff from his deceased son was that given by plaintiff himself. He stated the age of his son, and that when he was employed near enough to plaintiff's residence he boarded there and paid or contributed therefor fifteen or twenty dollars per month; that he would sometimes purchase for plaintiff articles of clothing but not to exceed thirty dollars per year; and there is nothing to show that the contributions to the household were made when deceased was not boarding therein. The amount of the contributions testified to would scarcely be sufficient to pay decedent's board bill. But, if we should eliminate the question of board, and treat the contributed items as a pure donation, and should further accept the maximum amount of twenty dollars per month, and should also treat the question from the standpoint of a continuance thereof without suspension upon decedent removing elsewhere, and add to that sixty dollars per year as contributions for clothing for plaintiff instead of thirty dollars, to which he testified, his pecuniary benefits thus assumed would only be three hundred dollars per year throughout his expectancy

of 11.48 years, the present value of which calculated on the basis of 6% would be approximately $1,790.00, and on a basis of 5%, $1,987.00, and at 4%, $2,208.00. It will thus be seen that the most liberal calculation that can be made, under the facts proven, shows that the verdict of $4,000.00 is largely in excess of the pecuniary loss sustained. It is not our province to question the wisdom or the policy of the statute in so limiting the right of recovery, since our duty, as has been often declared, is to administer the law as we find it.

In the case of McCullough v. The Chicago, Rock Island & Pacific Ry. Co., 160 Iowa 524, the beneficiaries, who were the parents of the servant who was killed, were 53 and 54 years of age, respectively, and had a much longer expectancy than the plaintiff in this case. They were people financially circumstanced similarly to that of plaintiff, and the son made contributions in the way of paying for his board and, according to the testimony, "in other ways, too." The court held that a verdict for $5,000.00 was excessive and said: "They (the jury) should not be permitted to render a finding solely upon the earning capacity of the decedent nor upon the amount of damages accruing to him or his estate; nor should they be required or permitted to make a mere guess without the aid of pertinent facts tending to show the extent of the pecuniary loss." It also must not be overlooked that there is no question here as to the pecuniary value of decedent's services to plaintiff, since he was not a minor but 27 years of age. It was further held in the McCullough opinion that "There is no presumption in favor of substantial pecuniary loss to parents or dependent relatives, except such inference or presumption as may naturally arise out of evidence tending to show such loss," which statement was made with reference to adult children.

Upon the whole case we find ourselves unable to uphold the size of the verdict in this case in the light of the foregoing construction of the statute and under the facts developed, and for that reason alone the judgment in the first appeal is reversed with directions to grant a new trial and for proceedings consistent with this opinion, but the judgment in the second appeal is affirmed.