## Director General of Railroads v. Chapman's Administratrix.

(Decided June 16, 1922.)

## Appeal from Lawrence Circuit Court.

1. Master and Servant—Negligence—Evidence—Waiver.—The petition herein for damages for the alleged negligent death of an employe on the railroad owned by the C. & O. Railway Company, averred that decedent and those whose negligence caused his death were employes of the C. & O. Ry. Co., but alleged further that said railroad was at the time being operated by and under the control of the Director General of Railroads under the Federal Control Act. The owning company was dismissed upon the ground it was not liable because the petition showed the road was at the time being operated by the Director General. A demurrer by the latter was then overruled. Held this was not error, and if it had been it was waived by answer which did not deny the alleged negligence and offered to confess judgment therefor but for a smaller amount than that alleged in the petition.

2. Master and Servant—Federal Employers' Liability Act—Value of Services.—The recovery allowed by the Federal Employers' Liability Act is limited to the present value of the pecuniary loss sustained by dependents, and a calculation based upon his probable earnings for the period of his expectancy, while not conclusive, furnishes a basis for an estimate to be considered in determining whether a verdict is excessive, to which should be added the proven value of the personal services of decedent to his beneficiaries which they might have reasonably received from him and which can only be supplied by the services of others for compensation.

3. Master and Servant—Federal Employers' Liability Act—Excessive Damages.—Verdict under Federal Employers' Liability Act of $25,000.00 for negligent death of section hand 49 years of age and earning $60.00 a month, whose dependents consisted of his widow and five children from two to eleven years of age, held excessive.

4. Master and Servant—Federal Employers' Liability Act—Evidence.—Since a recovery under the Federal Employers' Liability Act may include the present value of the personal services the beneficiaries might reasonably have anticipated from decedent, testimony thereof is competent; but evidence of the value of benefits beyond the proven ability of decedent to bestow was not competent, and its admission prejudicial.

KIRK & KIRK and WORTHINGTON, COCHRAN, BROWNING & REED for appellant

E. C. O'REAR, WM. L. WALLACE and M. S. BURNS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This action was instituted under the Federal Employers' Liability Act by the administratrix of John Chapman against the Chesapeake and Ohio Railway Company and the Director General of Railroads, to recover damages for the alleged negligent death of the decedent on July 16, 1918.

Although alleging that the railroad was at the time under the control and being operated by the Director General pursuant to the provisions of the Federal Control Act, plaintiff averred that the decedent was at the time of his death in the employ of the defendant railroad company, and that the negligence of its agents, servants and employers, superior in authority to him, caused his death.

The railroad company filed a plea in abatement and motion to dismiss, which were sustained and the action against it was dismissed. Thereupon the Director General filed a demurrer and a motion to require plaintiffs to make the petition more definite and certain, which were overruled. The Director General then filed answer denying simply that the decedent's beneficiaries and dependents were wholly dependent upon him for support and maintenance or that they had been damaged in the sum of $50,000.00, as alleged in the petition, but admitting that they were partially dependent upon the decedent and that they had been damaged from "the loss of pecuniary benefits resulting from the loss of decedent's support and maintenance" in the sum of $5,000.00, and offering "to confess judgment herein in the amount of $6,500.00, in full of plaintiff's demands, and to pay the costs of this action."

The offer to confess was refused by plaintiff, and upon a trial of the single issue as to the extent of the damages a verdict for $25,000.00 was rendered.

For reversal of the judgment entered thereon against the Director General, he urges:

(1) That the petition did not state a cause of action against him, (2) that the verdict is excessive, and (3) that incompetent evidence for plaintiff was admitted over his objections and exceptions.

1. While it is true the petition charges that decedent was an employe of, and his death was caused by the negligence of employes of the railroad company, it further alleges that at the time the railroad was under

the control of and being operated by the Director General, who, as we know judicially, was at the time the real employer of decedent, as well as those persons engaged in the operation of the railroad owned by the Chesapeake and Ohio Railway Company, whose negligence the petition alleges and the answer confesses caused the death of decedent.

Certainly the petition states a cause of action against the railroad company or the Director General, and the same attorneys who urge for the latter that it does not state a cause against him, upon an insistence for the former that it did this only, procured a dismissal of the railroad company, which they still insist was proper.

If the trial court erred in overruling the demurrer of the Director General, he certainly erred in dismissing the railroad company. We do not think he erred in either instance, since despite the inapt and contradictory language employed, the petition makes it perfectly plain that the Director General and not the railroad company was the employer of decedent and those responsible for his death, and that he alone is liable for any damages resulting therefrom.

But even if it should be conceded the petition was fatally defective as against the Director General, this defect was effectually cured by his answer and offer to confess judgment for the sum he conceded plaintiff had been damaged.

2. As to whether or not the verdict is excessive but little need be said, since its size is such that it strikes the mind at first blush as being the result of passion or prejudice upon the part of the jury, unless indeed it may be accounted for by the incompetent evidence that plaintiff was permitted to introduce over the objections and exceptions of the defendant.

Decedent was 49 years of age at the time of his death, with an expectancy of twenty-two years. He left surviving him a widow and five infant children, the ages of the latter ranging from two to eleven years. His education was meagre, as was also his earning capacity, but he was a splendid Christian character, attentive and affectionate toward his family and ambitious that his children should receive the best education he could give them.

At the time of his death he was employed by the defendant as a section laborer, and as such he was earn-

ing approximately $60.00 per month. While he was capable of, and had been employed or engaged at times at slightly more remunerative work, the evidence does not indicate that during the twenty-eight years of his majority his average earnings had exceeded, if indeed they had equalled, what he was receiving from the defendant at the time of his death, or indicate a probability that they would exceed greatly, if at all, that amount in the future.

The recovery allowed by the federal act, as interpreted by the Supreme Court of the United States, as well as this and other courts of last resort, is limited to the present value of the pecuniary loss sustained. Michigan Central R. R. Co. v. Vreeland, 227 U. S. 59; C. & O. Ry. Co. v. Kelly's Admrs., 241 U. S. 485; Southern Railway Company v. Bennett, 233 U. S. 80; L. & N. R. R. Co. v. Holloway's Admr., 168 Ky. 262, 181 S. W. 1126; L. & N. R. R. Co. v. Thomas' Admr., 170 Ky. 145, 185 S. W. 840; L. & N. R. R. Co. v. Allen's Admr., 174 Ky. 736, 192 S. W. 863; C. N. O. & T. P. Ry. Co. v. Jones' Admr., 177 Ky. 485, 197 S. W. 932; C. & O. Ry. Co. v. Maggard's Admr., 193 Ky. 259.

While a calculation based upon the decedent's earning capacity for his life expectancy is not conclusive as to the amount of recovery by his dependents, it furnishes a basis for an estimate to be considered upon the question of whether the verdict is excessive, together with the proven value of the personal services of decedent to his beneficiaries, which they might have reasonably received from him and which can only be supplied by the service of others for compensation.

Upon this question of whether or not the verdict is excessive, counsel for the parties have cited about seventy cases from this and other courts, and manifestly we could not discuss all of them in this opinion, even if that were desirable, but as the size of the verdict in any case must depend upon its particular facts, and as in no case cited by either party where the verdict is anything like as large as in this instance were the facts even nearly akin to those presented here, we do not deem that it would be profitable to discuss any of those cases.

It is sufficient to say, we think, that if this judgment should be sustained upon the competent evidence produced at the trial, this case would establish a high mark never before attained in any reported case. We are there-

fore of the opinion that the judgment for this reason should be reversed.

3. While the plaintiff unquestionably had the right to introduce witnesses to prove the value of the personal services the beneficiaries might reasonably have anticipated from the decedent—his widow during his life expectancy and his children during their infancy—she certainly did not have the right to introduce evidence of the cost during such periods of benefits which there was no reasonable basis from the evidence of anticipating the beneficiaries could have received from the decedent personally, or otherwise through him; and to permit plaintiff to introduce evidence of this character was highly prejudicial to the defendant. In our opinion, this evidence is the only thing in the record that even tends to explain the size of the verdict, or upon which it could be justified.

Much of the evidence of E. E. Shannon, H. B. Hewlett, Professor Kensington and Professor Byington was of this character. For illustration let us take the following questions and answers of Mr. Hewlett, to all of which defendant objected and excepted, and thereafter moved to exclude it:

"Q. Now, Brother Hewlett, we have in question and answer only considered the mere matter of the physical keep of these children, but I am going to put now a question which goes further, in addition to the physical keeping, and this question is addressed to their mental keeping, to their mental development, to their mental education. Now in this question I am going to define what I mean by the term education. I mean that these children should be entitled to have this kind of an education; they are to be put in school and kept in school; first in the common schools of your community, or the community where they live; that they are to be provided with what books that may be necessary and the other paraphernalia necessary in the school they attend, provide them a high school education and to give them such a college education as will fairly and reasonably equip them as they should be to meet the competition of their fellow men in life; such an education as will fairly and reasonably equip them so that they can enjoy the benefits and the privileges of citizenship and to be the heads of families and to discharge their duties in those capacities. Now, what sum of money in your judgment, taking into consideration

the present prices, and take into consideration, as based on the prospects through these years of the needs of these children, the training that it would be necessary for each one of these childrn to have, taking into consideration that at their father's death they were two, four, seven, nine and eleven years of age, four of them being boys and one a girl— .

"A.   You mean by that to give them a college education?

"Q.   The kind of education that I have told you about, not the best education that they could be given, but a fit and sufficient education to enable them to meet fairly the competition of their fellows, in the time and generation in which they lived?

"A.   $2,500.00 I would say.

"Q.   $2.500.00 each?

"A.   Yes, sir."

It requires no argument to prove that such testimony was utterly incompetent, since decedent could not possibly have furnished his children with such educational advantages, either personally or otherwise, as the questions and answers assume he could have done.   Such, like any other hypothetical questions, must be based upon the facts and circumstances established by the evidence, and the evidence in this case furnishes no basis whatever for the assumption upon which these questions and answers are based.

In support of their contention that this evidence was competent, counsel for plaintiff rely upon the case of Klanowski v. Grand Trunk Railway Company (Mich.), 24 N. W. 801, as do counsel for defendant to prove its incompetency.   It was there held, and correctly we think, that "Evidence may be introduced to show the value of deceased to his family, in order to enable the jury to fix the damages.". The admission of evidence of this general character was approved, but only to the extent that data and facts upon which it was hypothecated were furnished by the evidence.   There was no such basis in the evidence complained of, and we are clearly of the opinion that it was incompetent and highly prejudicial.

Objection is also made to the evidence of Tom Hay as to what intestate could have earned at different occupations other than that at which he was actually engaged at the time of his death.   We do not think, however, that this evidence was incompetent, since the other

occupations referred to were such as, on the evidence, deceased was capable of performing. The admission of such evidence has been approved by this court, expressly in Stearns Coal & Lumber Co. v. Williams, 164 Ky. 618, 176 S. W. 15, and by inference in Louisville & Nashville Railroad Company v. Briggs, 185 Ky. 676, 215 S. W. 529.

Wherefore, for reasons indicated, the judgment is reversed and the cause remanded for another trial consistent herewith.