[Civ. No. 17844. Second Dist., Div. Three. Apr. 27, 1951.]

CHARLES PARGA, as Administrator etc., Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

Head, Wellington & Jacobs and Winthrop O. Gordon for Appellant.

C. W. Cornell, O. O. Collins and John R. Allport for Respondent.

BARTLETT, J. pro tem.—Charles Parga, as administrator of the estate of Hilarion Parga, deceased, brought this action against the respondent under the provisions of the Federal Employers' Liability Act [45 U.S.C.A. § 51 et seq.] to recover damages sustained by the children of Hilarion Parga by reason of an accident alleged to have been caused by the negligence of the respondent, as a result of which Hilarion Parga died. At the time he received the injuries in this accident, he was an employee of respondent and engaged in work for it. At the conclusion of the case, the court directed a verdict for the respondent, Pacific Electric Railway Company.

Appellant contends that the case should be reversed for two reasons: (1) that there was evidence from which the jury could have held that there was negligence on the part of the respondent which was the proximate cause of injuries from which Hilarion Parga died, and (2) that there was sufficient proof of damages to his children because of his death to entitle appellant to have the question of the amount of damage submitted to the jury.

Hilarion Parga went to work for the Pacific Electric Railway Company on February 14, 1944. On August 1, 1944, the day of the accident, he was working as a section hand on the tracks of the company between 75th Street and Florence Avenue in Los Angeles County. At the place where he was working there were four parallel sets of tracks. Facing toward Long Beach, the two sets of tracks to the right carried trains outbound or toward Long Beach and the two to the left inbound or toward Los Angeles. The tracks and the distance between them were all of standard width. Immediately prior to the accident the track crew was working on the inside pair of the outbound tracks and deceased and Andreas Salgado, who was working with him, were standing just east of the easterly rail, putting dirt and gravel underneath the ties. The foreman in charge of the job, Jose Camarena, was charged with the duty, among other things, of watching for trains and warning the men working under him of their approach. These men were to keep on working until such warning was received and followed the orders of Mr. Camarena. At the time of this accident two trains were operating on the outbound track and one on the inbound tracks, which was the train that struck the deceased. Mr. Camarena testified he saw two trains traveling on the outbound tracks almost abreast of each other. Later on in answer to the question ". . . when you first saw the two cars coming, they were right on top of

you?" He answered: "That is right, about 3 to 400 feet away." The first thing that had attracted his attention to these two cars coming on the outbound tracks was when someone hollered. At this time Hilarion Parga was 150 feet away from Mr. Camarena and when Mr. Camarena saw the two cars he whistled and shouted "Watch out for the car." Five or 10 seconds later he saw the inbound train. He testified: "When I motioned for them to get away from the outbound trains that was going at the same time, then glanced back and saw the other train coming, I motioned to Hilarion to get away from that track and get in the middle of the two tracks. Q. Get in the middle of the four tracks? A. Three tracks, between two out-bound and in-bound. Q. You just motioned him? A. That is right. Q. You were about 150 feet from him at that time? A. That is right. Q. Then what did you see him do? A. At that time when I motioned him to get over, instead of taking my warning, he kind of seemed to get excited and stepped backwards and at the time the car was coming and he got hit."

■■ We quite agree with respondent that the Federal Employers' Liability Act is not a compensation statute but requires proof that defendant was negligent before liability will attach for injury to or the death of an employee; also that where the negligence of the deceased is the sole proximate cause of the accident causing his death, then there is no liability on the part of the employer. Respondent claims that that is the situation here.

Respondent concedes that the following statement of law which appears in appellant's brief is correct: "Because this is an appeal from a judgment entered upon the court's order directing a verdict in favor of the defendant and against the plaintiff, in considering this record the court will resolve every conflict in favor of plaintiff, consider every inference which can reasonably be drawn and every presumption which can fairly be deemed to arise in support of plaintiff and accept as true all evidence adduced, direct and indirect, which tends to support plaintiff's case. *Lashley* v. *Koerber*, 26 Cal.2d 83 [156 P.2d 441]; *Anthony* v. *Hobbie*, 25 Cal.2d 814, page 817 [155 P.2d 826]."

■■ Although there were eyewitnesses to the accident it is presumed that deceased used ordinary care for his safety at the time and place of the accident and this presumption was in itself a species of evidence. (*Broun* v. *Blair*, 26 Cal.App.

2d 613 [80 P.2d 95].) We have not attempted to recite all of the evidence in the record but that which we have related is sufficient to show that it would be for the jury to determine whether the evidence was sufficient to overcome this presumption and also whether or not the defendant used reasonable care in warning deceased of approaching trains under the circumstances which we have related. This brings us to appellant's next contention that there was sufficient proof of damages to have the question of the amount of damage submitted to the jury. The trial judge in granting the motion for a directed verdict stated, in effect, that he would be inclined to deny the motion if it were not for the state of the evidence concerning damages.

The allegation of the complaint concerning damages was ". . . there was incurred on account of the said deceased's funeral expenses in the amount of Six Hundred Twenty-five Dollars ($625.00); and as a further direct and proximate result of the said negligence of said defendants, plaintiff and said heirs at law of the deceased have been damaged in the sum of the amount of said funeral expenses and the further sum of Twenty-five Thousand Dollars ($25,000.00).'' The appellant offered evidence as to the funeral expenses of the deceased. An objection to the introduction of this evidence was correctly sustained. (*Heffner* v. *Pennsylvania R. Co.*, 81 F.2d 28.)

 The children, in whose behalf this action was brought, were six in number. The eldest was Ynez P. Lopez. She was 52 years old and had been supported by her husband for many years. Marguerita Edquevel was 49 years old, married and supported by her husband. The sons, four in number, range in age from Louis, 44 years of age, to Charles, the youngest, who was 35. Each of these sons is married and had supported himself and family for years. Hilarion Parga owned a piece of land at Santa Ana on which were three buildings. Henry Parga, as he had the largest family, lived in the largest house. In fact, he bought the house from the estate after his father's death. Appellant, in his brief, states that Henry paid no rent for this house but there was no such evidence in the record or any testimony from which such a state of affairs could be inferred. Henry was not even called as a witness and appellant, who did testify, gave no such evidence. Back of this house were two houses in one of which resided Jose Cortez and in the other Hilarion Parga and his son Louis. Louis, when asked if he paid his father any rent,

replied, "Indirectly." That answer was elaborated on later by testimony that he and his father shared all of their household expenses but he did not testify that he profited in any way by these arrangements nor did he give any testimony from which any such inference could be drawn. Charles Parga testified that before Hilarion, his father, went to work for the Pacific Electric Railway Company, they worked together on a farm the witness was operating and that his father said that after he got through working for the Pacific Electric he would return to the farm work. There was no testimony as to any benefit the witness received from this arrangement or that his father had any idea of quitting his work for the defendant company. There was no definite testimony that the deceased gave any money at any time throughout the years to any of his children. The nearest to it was the testimony of Charles Parga, that while his father never gave him any money he, Charles, did borrow some money from his father on one occasion in 1942 but had not paid it back. There is no testimony as to how old Hilarion Parga was and consequently none as to his life expectancy. He worked for the Pacific Electric Railway Company from February 14th to August 1st, a period of 5½ months but gave none of his earnings to any of his children nor is there any evidence as to how much he earned then or as to what he had earned at any period of his life.

The foregoing constitutes all of the evidence before the court at the time it refused to submit the question of damages to the jury. The appellant states: "There are many cases on comparable facts where awards of substantial amounts were sustained and a few of those cases are cited herein below. . . ." We have examined those cases with care. The first one referred to is *In re Barker's Estate*, 134 Misc. 833 [237 N.Y. Supp. 212], which was a decision of the Surrogate Court of New York approving a settlement of a claim on which no action had been brought and all the court was concerned with in that case was as to how the money should be divided among the various heirs. In *Lundeen* v. *Great Northern Ry. Co.*, 128 Minn. 332 [150 N.W. 1088], the testimony before the court disclosed that the young man who had died was 23 years of age; that his parents were in need; that for the past 4 years he had given aid to his parents and an award of $2,000 damages was upheld. The case of *Dow* v. *Carnegie-Illinois Steel Corp.*, 165 F.2d 777, is of no aid whatever as that was a case

wherein the judgment was in favor of the defendant and the court reversed the case because of the admission of certain improper evidence. The questions before us in this appeal were not even discussed. *Sabine Towing Co. v. Brennan*, 85 F.2d 478, was an appeal in admiralty from a judgment awarding damages for the death of members of the crew of a tug which had foundered in the Gulf of Mexico. In each of the claims which were made in that case the evidence was complete, direct and certain as to the age of the member of the crew, as to what the member of the crew had earned and as to the actual money which each month he had turned over to his beneficiaries. There is a complete lack of this type of evidence in the case before us. *Director General of Railroads v. Chapman's Adm'x.*, 195 Ky. 364 [242 S.W. 365], was an action brought by the administratrix on behalf of the widow and five minor children aged from 2 to 11. The age of the deceased was in evidence, the amount that he earned and the fact that his five children were entirely dependent upon him for support. *Haidacker v. Central R. Co. of New Jersey*, 52 F.Supp. 713, which was the last case appellant cites and from which he quotes, was a decision of the United States District Court on a petition for approval of a compromise settlement offered by the defendants in an action brought under the Federal Employers' Liability Act. The court had before it the wages of the deceased at the time of his death, the fact that his life expectancy was 27.45 years and also that a minor child would have an expectancy of support up until the time he attained his majority. The other child was an adult. The adult waived any claim. In commenting on this the court said (p. 714) : "There are situations where a child who has attained the age of twenty-one years would be entitled to damages if he had in fact suffered a pecuniary loss. Such an instance would be the case of one who was not employed and who was living at home and supported by the deceased, or who was living away from home and was ill or crippled and receiving support from the deceased. . . ." It will be seen from this brief statement regarding this case that the facts are in no way comparable to those we have here and no case has been called to our attention where damages in any amount at all have been allowed in situations like this one. In cases of the type we are considering the rule is that no damages should be allowed. In *Williams v. Southern Pac. Co.*, 54 Cal.App. 571 [202 P. 356], the father of one, Mrs. Peabody, died. In that case, as in the one we have here, there was no allegation either

that Mrs. Peabody was dependent upon the deceased or that she had any grounds for expecting any pecuniary benefits from a continuance of her father's life. She was an only child but was 21 years of age and married at the time of her father's death and there was no evidence that after she was married she received any assistance from her father. The court said (pp. 581, 582): "Appellant contends that under the facts shown the case of *Gulf, C. & St. F. R. Co.* v. *McGinnis*, 228 U.S. 173 [57 L.Ed. 785, 33 S.Ct. 426, see also, Rose's U. S. Notes], is conclusive against a recovery in behalf of Mrs. Peabody. In that case the administratrix sued under the federal act for the benefit of herself and four children, one of whom was an adult married daughter. Judgment was given for the sum of $15,000, one-half of which was apportioned equally to the four children. The court of civil appeals affirmed the judgment (*Gulf C. & S. F. Ry. Co.* v. *McGinnis* (Tex. Civ.), 147 S.W. 1188.) The supreme court of the United States reversed the judgment on the sole ground that, under the pleadings and proofs, the married daughter was not entitled to recover. The court said: 'There was neither allegation nor evidence that Mrs. Saunders was in any way dependent upon the decedent, nor that she had any reasonable expectation of any pecuniary benefit as a result of a continuation of his life. . . . In a series of cases lately decided by this court, the act in this aspect has been construed as intended only to compensate the surviving relatives of such a deceased employee for the actual pecuniary loss resulting to the particular person or persons for whose benefit an action is given.' (See, also, *Garrett* v. *Louisville etc. R. R. Co.*, 235 U.S. 312 [59 L.Ed. 242, 35 S.Ct. 32, see, also, Rose's U. S. Notes].) There is no distinction in principle between the McGinnis case and this. In neither case was there any evidence from which to infer that pecuniary benefits would have been received except the bare fact of the relationship of father and daughter. In the McGinnis case it was held that the issue raised was a federal question and that case is controlling here where the identical question is presented." In addition to the cited case and the United States Supreme Court decisions referred to therein, other cases definitely holding that no adult child can recover damages in the absence of evidence showing either dependency or reasonable grounds for expecting some pecuniary benefit from 'the continuance of the decedent's life are *Thompson* v. *Camp*, 163 F.2d 396, *Nashville, C. & St. L. Ry.*

v. *Hines,* 20 Tenn.App. 1 [94 S.W.2d 397], *Hines* v. *Walker,* (Tex.Civ.App.), 225 S.W. 837. In *Gulf, C. & St. F. R. Co.* v. *McGinnis,* 228 U.S. 173 [57 L.Ed. 785, 33 S.Ct. 426], the fact that the trial court refused to instruct the jury that they could not find any damage for an adult married daughter was held to be grounds for reversal. In the case before us we are asked to reverse the trial court in a situation where if there had been a verdict for the plaintiff, there would have been no basis in the evidence whatever for the amount of damage which would necessarily have been based purely upon guess, speculation and surmise. There was no evidence before the court of dependency or of any reasonable expectation of pecuniary benefit to any of these children from a continuance of the life of Hilarion Parga or, viewing the testimony in its most favorable light, any testimony from which any reasonable inference could be drawn of such an expectancy.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 25, 1951.